**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SAMUEL DONETS,** individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | No. 1:20-cv-03551 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | Hon. Franklin U. Valderrama |
| **VIVID SEATS LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**OPPOSED MOTION TO LIFT STAY FOR THE LIMITED**
**PURPOSE OF GRANTING FOR RELIEF UNDER RULE 23(d)(1)**

Plaintiff, Samuel Donets, submits this memorandum of law in support of his request that the Court lift the stay in place in this litigation (*see* Doc. 37) for the limited purpose of granting Plaintiff relief pursuant to Fed. R. Civ. P. 23(d).

## I.    Introduction

The underlying case is a proposed class action brought by Plaintiff, a former employee of Defendant Vivid Seats LLC ("Defendant" or "Vivid Seats"), for alleged violations of the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq*. Defendant successfully sought a stay of this case on November 20, 2020, premised on appeals pending in the Illinois Appellate Court and the Seventh Circuit, and premised on representations to the Court by Defendant that failure to enter a stay during the pendency of said appeals would result in undue burden, expense, and unnecessary attorneys' fees and costs incurred in litigating a case where the claims "may be completely time-barred, preempted, or significantly reduced in scope and value." (Doc. 32, Mot. ¶¶ 2, 3, 5, 9). Defendant further represented to the Court that it wanted to have its "limited human capital" run its business rather than engage in class action litigation and discovery.

(*Id.* ¶ 8). The Court granted the stay on December 15, 2020, stating in part that Plaintiff's opposition to the stay did not "justify denying Vivid Seats' request for a stay, taking into account the economies to be gained from staying this litigation." (Doc. 37, Order at 4).

Notwithstanding these representations and claims of financial distress in the event the case moved forward, and notwithstanding the Court's reliance on same in granting the stay, Defendant communicated directly with potential members of the putative class and tried to settle their claims individually for $100 apiece without asking the Court to lift the stay and without saying anything to Plaintiff's counsel. In fact, Plaintiff only discovered Defendant's improper communications with potential class members when Defense counsel solicited Plaintiff to settle the case for $100 without notice to Plaintiff's counsel.

As discussed below, the communications sent to the prospective class members by Defendant (and its counsel) were misleading, coercive, incomplete and, it is respectfully submitted, demand a response under Rule 23(d)(1). Plaintiff requests that the Court lift the stay for the limited purpose of issuing an Order pursuant to Rule 23(d)(1) that (i) invalidates any Limited Release of Claims Agreements ("Limited Release") and Notice of Retention Policy and Consent Form ("Consent Form") obtained from putative class members by Defendant or its counsel; (ii) that Defendant and its counsel be ordered to provide the names, addresses, and email addresses of all employees, former employees, independent contractors, or anyone else that Defendant or its counsel or representatives sent the Limited Release, Consent Form, and the Cover Sheet accompanying these documents; (iii) that Defendant provide Plaintiff with any signed copies of the Limited Release and Consent Forms; (iv) that Defendant and its counsel be barred from contacting Plaintiff or any other putative class member directly regarding this litigation without prior notice to Plaintiff and Court approval; and (v) that a Court-approved corrective notice be

issued at Defendant's expense advising of the status of this case, the damages available under BIPA, the issues raised and the current status of *White Castle*, *Tims*, *Marion*, and *McDonald*, *see infra*, and that putative class members may contact Plaintiff's counsel for more information or retain their own counsel.

## II.   Background

### A.   The Court grants Defendant's motion to stay the case.

On November 20, 2020, Defendant moved for a stay of the instant case based on pending appeals in the Illinois Appellate Court in *Tims v. Black Horse Carriers, Inc*., App. No. 1-20-0563 ("*Tims*") and *Marion v. Ring Container Technologies, LLC*, No. 3-20-0184 ("*Marion*"), both of which address the question of which statute of limitations period applies to BIPA claims, and in the Illinois Supreme Court in *McDonald v. Symphony Bronzeville Park, LLC* ("*McDonald*"), which addresses whether a BIPA claim is preempted by the Illinois Workers Compensation Act. (Doc. 32, Mot. at 1-3; *see also* Doc. 37, Order at 2, 5).[1] Defendant also relied on the interlocutory appeal of *In Re: White Castle System, Inc*., No. 20-8029, currently pending in the Seventh Circuit, which addresses whether a private entity violates BIPA only when it first collects an individual's biometric information, or whether a violation occurs each time a private entity collects or discloses the biometric data in violation of 740 ILCS § 15(b) or 15(d).  (*Id.* at 2; Order at 2, 3).

In its motion to stay, Defendant represented to the Court that a stay was "appropriate to avoid undue burden and expense," and that should the case proceed, "the parties will incur significant attorneys' fees and costs that may be rendered unnecessary by rulings on the pending interlocutory appeals." (Mot. ¶ 5). Defendant further represented that the COVID-19 pandemic

---

[1] At the time of Defendant's reliance on *McDonald* in its motion, a petition for Leave to Appeal was pending.  The Court rejected *McDonald* as a basis for staying the case. The Illinois Supreme Court subsequently granted the petition for Leave to Appeal in *McDonald*. (*See* Doc. 38).

"has severely impacted [Defendant's] workforce and revenue," that a stay would permit Defendant to "dedicate its limited resources to the operation of its business," and that Defendant "would be unduly prejudiced absent a stay, forced to continue to defend claims and engage in discovery on claims that may be completely time-barred, preempted, or significantly reduced in scope and value." (*Id*. ¶¶ 8, 9). Defendant argued Plaintiff would suffer no prejudice in that he is a former employee who "waited approximately five years to bring his claims in the first place." (*Id*. 9)

On December 15, 2020, the Court granted the motion in part, finding it was "appropriate" to stay the case pending the *Tims* and *Marion* decisions in that said decisions "could control the Court's resolution of the timeliness issue and guide the parties' positions as they proceed with this case." (Doc. 37, Order at 3). The Court also found a stay was appropriate based on the Seventh Circuit's decision in *White Castle* as to when an injury occurs under BIPA, stating in part that "if the Seventh Circuit disagrees with the district court, and holds that a violation occurs only when the entity first collects or first discloses an individual's biometric data, it may dispose of Donet's claim if the Illinois Appellate Court were to hold that a one-year statute of limitations applies." (*Id.* at 4). The Court rejected Defendant's reliance on *McDonald* as a basis for the stay.

The Court further stated that "according to Vivid Seats, a stay would conserve the parties' and judicial resources and save expenditures on potentially costly motion practice and discovery." (Order at 4). The Court rejected Plaintiff's arguments opposing the stay, namely, that a stay would allow Defendant to continue to store and potentially misuse Plaintiff's biometric data in violation of BIPA, stating that such concerns "do not justify denying Vivid Seats' request for a stay, taking into account the economies to be gained from staying this litigation." (Order at 4).

### B. Defendant communicates with Plaintiff and potential class members to attempt to settle the case for $100 without seeking to lift the stay, notify Plaintiff's counsel, and without advising of statutory damages available under BIPA.

Notwithstanding the representations it made to the Court to secure the stay, and without

moving to modify the stay or notifying Plaintiff or the Court, Defendant solicited Plaintiff <u>directly</u> to settle the case for $100. On June 11, 2021, Plaintiff received a Limited Release, Consent Form, along with a Cover Sheet. (*See* Declaration of Samuel Donets, attached hereto as Exhibit 1 at ¶ 3; *id*. Ex. A). The Cover Sheet is addressed to the Plaintiff, Samuel Donets, is set forth on **VIVIDSEATS** letterhead, and is dated June 2, 2021. (Donets Decl., Ex. A, at 1).[2] The Limited Release is pre-dated to June 1, 2021, and is signed by Ryan J. Fitts, Vivid Seats' Vice President, Legal & Government Affairs. (*Id*.). The Cover Sheet mentions the instant case, states that Defendant intends to vigorously defend against the lawsuit, and then states Defendant is "offering you a settlement to put this matter to rest," as follows:

> In exchange for receiving a [1] signed Limited Release of Claims and [2] a signed notice retention policy and consent form, Vivid Seats will pay you a lump sum of $100.00 within 45 days of receiving your properly signed documents. The two documents you must sign to receive the money are enclosed. If you want to accept this offer—which may be more or less than what you may ultimately recover in the Lawsuit—please mail your signed copies of these documents to legal@vividseats.com or, in the alternative, using the self-addressed, stamp envelope included to [Vivid Seats LLC's address].

(*Id*.)

The Cover Sheet acknowledges that Defendant has not provided a copy of the operative Complaint with the communication but instead states "If you would like a copy of the Lawsuit, please contact legal@vividseats.com." (*Id.*). While the Cover Sheet mentions the offer to settle for $100, it fails to inform that the statutory damages for violating BIPA is either $1,000 (for negligent violations), or $5,000 (for intentional or reckless violations), and it says nothing regarding the *White Castle* appeal (or *Tims* and *Marion*), and the issue to be decided therein, namely, whether a private entity violates BIPA only when it first collects an individual's biometric information, or

---

[2] Exhibit A to both the Donets Declaration and Wooten Declaration consists of 5 pages—Page 1 is the Cover Sheet, Pages 2-4 are the Limited Release, and Page 5 is the Consent Form.

whether a violation occurs each time a private entity collects or discloses the biometric data in violation of 740 ILCS § 15(b) or 15(d). (*Id*. at 1).

The Limited Release also references the instant case, states it is a potential class action and that "if the court were to certify the class and Vivid Seats were found to have violated BIPA, you may potentially be a class member and entitled to monetary relief." (Donets Decl., Ex. A at 2). However, like the Cover Sheet, the Limited Release also fails to advise recipients of the potential amount of statutory damages available for violating BIPA, and also makes no mention of the "*White Castle* issue," *Tims*, or *Marion*. (*Id*. at 2-4).

Next, while the Limited Release in Section 2, *Limited Release of Claims*, states that "You give up any claim that is asserted in the Lawsuit or that could have been asserted, or that will be asserted in the Lawsuit," *id*. at 3 ¶ 2, it then states in Section 3, *Promise Not to Sue*, that "Besides releasing claims covered by the Limited Release of Claims in Section 2, you agree never to sue Vivid Seats for any reason covered by the Limited Release of Claims." (*Id.* at 3 ¶ 3). Section 3 further states that "By signing this Agreement you give up all rights to money or other individual relief based on any agency or judicial decision, including but not limited to, class or collective action rulings," *id*., and that "You further agree that you are not entitled to recover a monetary amount from the Lawsuit, and you will not participate in a legal action that seeks to stop, reverse, undo, or impact this Agreement," *id*.

In other words, having failed to mention the possible statutory damages available under BIPA, and having failed to mention *White Castle* (which may serve to increase substantially the available statutory damages to any class member), Defendant at the same time seeks to preclude any signatory to the Limited Release, *i.e*., any potential class member, from getting out from under its misleading terms. Relatedly, in Section 5, *Voluntary Execution*, it is provided that "You further

6

agree that you are aware of the Lawsuit, have had an opportunity to review the allegations in the Lawsuit, and that you may be a potential class member in the Lawsuit and the claims at issue in the Lawsuit are included among the claims you are waiving and releasing by signing this Agreement." (*Id.*)  Again, Defendant fails to mention available BIPA damages or *White Castle*. Moreover, the Lawsuit is not provided in the communication; rather, to "review the allegations in the Lawsuit," the class member has to "contact legal@vividseats.com." (Donets Decl., Ex. A at 1).

Finally, besides signing the Limited Release to obtain the $100 offer, the targets of Defendant's solicitation are also required to sign the Consent Form whereby Defendant seeks to wring out of these potential class members an after-the-fact written consent regarding Defendant's earlier violations of BIPA:

> I hereby acknowledge that I have received this notice of the Company's retention policy, and that I voluntarily consent to the Company's, its vendors', and/or the licensor of the Company's time and attendance software's ***prior use*** of the timekeeping system, including to the extent that it utilized the employee's finger scan(s) and related templates, and hereby acknowledge my voluntary consent to the Company ***having provided*** such templates and associated data to its vendors, and/or the licensor of the Company's time and attendance software.

(Donets Decl., Ex. A, at 5) (emphasis added).

### C.   Defendant refuses to agree to lift the stay or discuss its involvement in the unilateral communications to Plaintiff and potential class members.

On June 11, 2020, Plaintiff alerted his counsel that Defendant had sent him directly (and not to his counsel) the Cover Letter, Limited Release, and Consent Form. (Declaration of Nicholas Wooten, attached hereto as Exhibit 2, at ¶ 3; Cover Letter, Limited Release, and Consent Form attached to Wooten Decl. as Ex. A). Upon learning of Defendant's actions, Mr. Wooten contacted counsel for Vivid Seats (Seyfarth Shaw ("Seyfarth")) via email on June 16, 2021, to address the matters raised in the communication to Plaintiff.  (Wooten Decl. at ¶ 4; a copy of the June 16,

2021, email is attached to the Wooten Decl. as Ex. B).

Thereafter, on June 21, 2021, Plaintiff's counsel (N. Wooten, R. Payton, and A. Czaja) conducted a telephone conference with members of Seyfarth. (Wooten Decl. at ¶ 5). Mr. Wooten requested that Vivid consent to a termination of the stay previously entered in the case, but Seyfarth refused. (*Id.* at ¶ 6). Mr. Wooten then inquired as to whether Seyfarth had prior knowledge that Vivid intended to communicate with the members of the putative class and further inquired as to whether Seyfarth had any involvement in the communications. (*Id.*) Seyfarth through attorney McCardle responded that it would not answer any questions based on attorney-client privilege. (*Id.* at ¶ 7).

After the June 21, 2021, teleconference, Plaintiff's counsel learned that Defendant's attorneys knew of the letter attached as Exhibit A to both the Donets and Wooten Declarations (the Cover Letter, Limited Release, and Consent Form) in that said letter was sent in an envelope with a Seyfarth label. (Wooten Decl. at ¶ 9; *id.* Ex. C; Donets Decl. at ¶ 4; *id.* at Ex. B). Plaintiff's counsel is aware of at least two other potential class members that received the same communication from Seyfarth. (Wooten Decl. at ¶ 11). At no time did any of Plaintiff's counsel consent to Defendant's counsel communicating directly with Mr. Donets. (*Id.* at ¶ 10). At no time did Defendant's counsel motion the Court to lift the stay. (*Id.* at ¶ 12).

<u>**Argument**</u>

**I.    Plaintiff requests that the Court lift the stay for the limited purpose of addressing Plaintiff's motion brought pursuant to Rule 23(d)(1).**

As the Court recognized in its Order granting in part Defendant's motion to stay, the Court has the power to control its docket, and has broad discretion to stay proceedings as an incident to that power. (Doc. 37, Order at 1). "How best to manage the court's docket 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" (*Id.* at 2

8

(citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). In deciding whether to stay proceedings, courts consider among other things, "whether a stay will unduly prejudice or tactically disadvantage the non-moving party." (*Id*. (citing *Berkley\*IEOR v. Teradata Operations, Inc.*, 2019 WL 1077124, at \*5 (N.D. Ill. Mar. 7, 2019)).

Plaintiff requests that the Court exercise its discretion to lift the stay entered on December 15, 2020, for the limited purpose of addressing Plaintiff's Rule 23(d)(1) motion. As set forth above, after securing a stay from this Court premised in part on its representations that this case should be stayed to avoid undue burden, expense, and significant attorneys' fees, and that Defendant would be "forced to continue to defend claims and engage in discovery on claims that may be completely time-barred, preempted, or significantly reduced in scope and value," Mot. at 4, Defendant (and its counsel) set about the business of attempting to secure releases and after-the-fact consents from Plaintiff directly and at least two (and presumably more) potential class members without notifying Plaintiff's counsel or the Court.

In addition, the Limited Release and Consent Form are misleading and do not contain enough information for the recipients of such communications to make an informed choice as to whether to accept $100 on a statutory claim that provides liquidated damages of $1,000 or $5,000 (and perhaps more pending the outcome of the *White Castle* interlocutory appeal in the Seventh Circuit). Defendant's after-the-stay actions have clearly unduly prejudiced and tactically disadvantaged the Plaintiff and therefore, the stay should be lifted for the limited purpose of allowing Plaintiff's Rule 23(d) motion to be heard. *Berkley\*IEOR*, 2019 WL 1077124, at \*5.

**II.    Pursuant to Rule 23(d), the Court should bar Defendant from using the Cover Sheet, Limited Release, or Consent Form, require corrective notice to be sent at Defendant's expense, require Defendant to identify to whom these documents/communications were sent, provide all signed copies of these documents, and require the Defendant to obtain the Court's prior approval before sending any further communications related to this litigation to potential class members.**

A.    The Cover Sheet, Limited Release, and Consent Form are misleading.

Because of the potential for abuse in class actions, a district court has pursuant to Rule 23(d)(1), "the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). This authority extends to the court's ability to limit communications between parties and potential or putative class members. *Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) (citing *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 759 (7th Cir. 2000)); *In re Broiler Chicken Antitrust Litig.*, 2019 WL 7285802, at *1 (N.D. Ill. Dec. 27, 2019) (same). Moreover, where there is an ongoing business or employment relationship between the class and class opponent, communications may be inherently coercive. *Piekarski*, 4 F. Supp. 3d at 955.

However, this authority is not without limits because parties have a right to contact members of a putative class. *Piekarski*, 4 F. Supp. 3d at 955 (citing *Williams*, 204 F.3d at 759). Accordingly, as the Supreme Court said in *Gulf Oil*, "[a]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties . . . In addition, such weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *In re Broiler Chicken*, 2019 WL 7285802, at *4 (quoting *Gulf Oil*, 452 U.S. at 101); *see also Williams*, 204 F.3d at 759. Using this rationale, district courts have restricted communications with potential class members not only by plaintiffs but also by defendants, as well as communications before a class is certified. *Piekarski*, 4 F. Supp. 3d at 955.

The moving party "bears the burden of showing that nonmovant engaged in coercive,

misleading, or other abusive communications with the putative class." *Piekarski*, 4 F. Supp. 3d at 955 (citing *Gulf Oil*, 452 U.S. at 102); *Belt v. Emcare, Inc*., 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003)). While misrepresentations made to putative class members are of "particular concern," *Piekarski*, 4 F. Supp.3d at 955, pre-certification communications with potential class members do not have to be false or misleading to be improper, *City of Santa Clara v. Astra USA, Inc*., 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (holding that there need not be a misstatement in a communication and that putative class members can be misled through omissions and failure to provide enough information); *see also Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015) ("[c]ourts in this district have limited communications, as well as invalidated agreements that resulted from those communications, when they omitted critical information or were otherwise misleading or coercive") (collecting cases)*; Cheverez v. Plains All Am. Pipeline, LP*, 2016 WL 861107, at *4 (C.D. Mar. 3, 2016) ("Courts routinely hold that releases that are misleading where they do not permit a putative class member to fully evaluate his likelihood of recovering through the class action"); *Gonzalez v. Preferred Freezer Services, LBF, LLC*, 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012) (communication procuring a waiver as part of a settlement misleading in that it did not provide any information regarding class action except that former employee had had brought suit against defendants, did not attach complaint, contained no information on when the case was filed, and had no information regarding the essence of the case).

Plaintiff easily meets its burden here because the "clear record" of Defendant's misleading communications with Plaintiff (and at least two other potential class member) is set forth in the text of Defendant's own written communications with Plaintiff contained in the Donets and Wooten Declarations as Ex. A). As stated, the Cover Sheet, the Limited Release, and the Consent

Form do not set forth the potential statutory damages available under BIPA of $1,000 or $5,000 for each violation (depending on whether the violation(s) was negligent or was intentional or reckless), and these communications say nothing regarding the *White Castle* issue, namely, whether a private entity violates BIPA only when it first collects an individual's biometric information, or whether a violation occurs each time a private entity collects or discloses the biometric data in violation of 740 ILCS § 15(b) or 15(d). (*Id*. at 1). Regardless of how the Seventh Circuit resolves the *White Castle* appeal, without knowledge of that case, without knowledge of the $1,000 and $5,000 BIPA statutory damages, and without knowledge of *Mims*, *Marion*, and *McDonald*, a putative class member simply cannot fully evaluate the likelihood of recovering in the Litigation and what amount that recovery could be. Indeed, having secured a stay based on the pendency of these appeals, Defendant's failure to mention them in the communication is misleading and unexplainable.

The Consent Form is also misleading in that it improperly seeks an admission that could arguably nullify the potential class member's current cause of action under BIPA. In particular, the Consent Form provides that the potential class member "voluntarily" consented to Defendant's "prior use" of the very policy that violates BIPA, and that the potential class member "acknowledge[s] my voluntary consent to the [Defendant] having provided such templates and associated data to its vendors, and/or the licensor of the [Defendant's] time and attendance software." (Donets Decl., Ex. A at 5). Thus, even if the Court invalidates the Limited Release, as Plaintiff respectfully submits it should, Defendant would no doubt attempt to rely on the Consent Form to nullify the potential class member's cause of action under BIPA. Also, while the Limited Release states that the putative class member can consult "with anyone about it, including your own attorney," *id*. at 4, it fails to identify any of Plaintiff's attorneys and presumes that a putative

class member has an attorney and would consult that attorney over a $100 offer.

      **B.**      **The Court should invalidate any Limited Releases and Consent Forms obtained from potential class members, require corrective notice be sent, require any future communications by Defendant to putative class members regarding this Lawsuit be first submitted to the Court, and Defendant and its counsel should be precluded from contacting Plaintiff directly.**

      "An order restricting communication between parties may be based upon a showing that a party has made misrepresentations to putative class members or has attempted to discourage class members from participating in the class." *Dominguez v. Don Pedro Rest*., 2007 WL 1650289, at *2 (N.D. Ind. June 1, 2007). In fact, courts have repeatedly barred and/or invalidated releases, waivers, and arbitration clauses procured without providing adequate information about the pending class action. For example, in *Piekarski*, 4 F. Supp. 3d at 954, defendants, after a stay of the case was entered at defendants' request, and without moving to modify the stay or notify plaintiff or the court, implemented a company-wide arbitration program for nearly all employment disputes and barred employees from pursuing litigation unless the employee opted out within 30 days (sent as an email which contained links to three documents: a Dispute Resolution Agreement ("DRA"), a cover letter explaining the new arbitration program, and a list of FAQ's regarding said program). Plaintiff asked that the court invalidate the DRA and authorize the issuance of corrective notice to Illinois class members, arguing that the implementation of the arbitration program was "improper, abusive and misleading" because it was done after the collective action was filed and after defendant had obtained a stay of the litigation (and was done in a way to make it unlikely employees would opt out). *Id.*

      Stating that defendants' actions were "highly improper in light of this Court's Orders issuing and clarifying the stay entered in this case, which [d]efendants requested," and that defendants' "abusive tactics must be remedied," the *Piekarski* court invalidated the DRA (the arbitration program) as it applied to Illinois class members in the litigation, ordered defendants to

provide the names, addresses, and email addresses of all Illinois class members who were sent the DRA, ordered defendants to provide plaintiff with any opt-out forms from Illinois class members, and authorized plaintiff to issue a court-approved corrective notice at defendants' expense. *Id*. at 956-57.

In *County of Santa Clara*, 2010 WL 2724512, at *4, the court invalidated releases obtained by letter to the putative class that did not attach plaintiff's complaint, explain plaintiff's claims or the status of the case, or include contact information for plaintiff's counsel and thus did not provide enough information so that the recipients "would not be misled about the strength or extent of the claims"; *see also Slavkov*, 2015 WL 6674575, at *2, *7 (holding "settlement releases signed by putative class members . . . are invalid" and ordering parties to submit competing curative notices)); *Guifu Li v. A Perfect Day Franchise, Inc*., 270 F.R.D. 509, 517-18 (N.D. Cal. 2010) (invalidating opt-out forms obtained through coercion and required corrective notices that gave notice of the class action, the invalidation of the opt-outs, and the law prohibiting retaliation against them by defendant employer).

As set forth above, Defendant's communications with Plaintiff and putative class members fail to provide the recipients of such communications with adequate information regarding the available statutory damages under BIPA or the pendency of the *White Castle* case and other cases mentioned above and are thus insufficient to allow the potential class members to make an informed choice. Moreover, the communications do not mention that there already are attorneys representing Plaintiff who could answer any questions they may have. Instead, as stated, recipients are advised to consult their own attorneys (assuming they have attorneys) over an offer of $100. Nor are the recipients provided with a copy of the operative Complaint. Instead, they are told to email Defendant and ask for a copy "of the Lawsuit." (Exhibit 1 at 1). However, assuming

*arguendo* that Defendant has sent the Cover Sheet, Limited Release, and the Consent Form to current employees, such a scenario in and of itself may be inherently coercive. *Piekarski*, 4 F. Supp.3d at 955.

1.      Wherefore, for the foregoing reasons, Plaintiff requests that the Court lift the stay in this case for the limited purpose of addressing Plaintiff's Rule 23(d)(1) motion, issue an Order pursuant to Rule 23(d)(1) that invalidates any Limited Releases and Consent Forms obtained by Defendant, requires Defendant to provide the names, addresses, and email addresses of all employees, former employees, or anyone else who were sent the Cover Sheets, Limited Releases, and Consent Form, requires Defendant to provide Plaintiff with any signed copies of the Limited Release and Consent Forms, and that Defendant and its counsel are barred from contacting Plaintiff directly regarding this case. Plaintiff also requests that the Court require a Court-approved corrective notice at Defendant's expense that advises putative class members of (1) the current status of this case, (2) the damages available under BIPA, (3) the issues raised and the current status of *White Castle*, *Tims*, *Marion*, and *McDonald*, (4) that putative class members may contact Plaintiff's counsel for more information or retain their own counsel, and (5) for any relief the Court deems just and proper.

 Dated:  July 27, 2021

                                              Respectfully submitted,

                                              SAMUEL DONETS, individually and on behalf of
                                              all others similarly situated

                                              By: /s/ Wallace C. Solberg
                                              Wallace C. Solberg
                                              Ryan M. Kelly
                                              ANDERSON + WANCA
                                              3701 Algonquin Road, Suite 500
                                              Rolling Meadows, IL  60008
                                              (847) 3688-1500
                                              wsolberg@andersonwanca.com

rkelly@andersonwanca.com

Nick Wooten
NICK WOOTEN, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

Rusty A. Payton
PAYTON LEGAL GROUP
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Arthur C. Czaja
LAW OFFICE OF ARTHUR CZAJA
7521 N. Milwaukee Avenue
Niles, Illinois 60714
(847) 647-2106
arthur@czajalawoffices.com


*Counsel for Plaintiff and the Putative Class*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Wallace C. Solberg
Wallace C. Solberg

17