# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **SAMUEL DONETS,** individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) No. 1:20-cv-03551 ) ) |
| v. | ) ) Hon. Franklin U. Valderrama ) |
| **VIVID SEATS LLC,** | ) ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO LIFT STAY FOR THE
LIMITED PURPOSE OF GRANTING FOR RELIEF UNDER RULE 23(d)(1)**

Plaintiff, Samuel Donets, submits this Reply in support of his Opposed Motion to Lift Stay for the Limited Purpose of Granting Relief Under Rule 23(d) filed by Defendant Vivid Seats LLC ("Defendant" or "Vivid Seats") (Doc. 45) ("Opp.").[1]

## Argument

**I. Defendant has violated the stay it requested by surreptitiously sending "settlement offers" to 333 former employees (including Plaintiff) and in so doing has undercut representations it made to the Court to obtain the stay.**

In persuading the Court to stay this case based on the pendency of cases in the Illinois Appellate Court (*Tims* and *Marion*) and in the Seventh Circuit (*In Re: White Castle System, Inc.*), Defendant represented that failure to do so would result in undue burden, expense, and unnecessary attorneys' fees and costs incurred in litigating a case where the claims "may be completely time-barred, preempted, or significantly reduced in scope and value." (Doc. 32, Mot. ¶¶ 2, 3, 5, 9). Defendant further represented to the Court that it wanted to have its "limited human capital" run

---

[1] On July 29, 2021, the Court entered an Order granting Plaintiff's motion to lift the stay entered on December 15, 2020 (Doc. 37) for the limited purpose of addressing Plaintiff's motion for relief under Rule 23(d). (*See* Doc. 44).

its business rather than engage in class action litigation and discovery. (*Id.* ¶ 8). In entering the stay, the Court stated: "according to Vivid Seats, a stay would conserve the parties' and judicial resources and save expenditures *on potentially costly motion practice* and discovery," Doc. 37, Order at 4 (emphasis added), and that Plaintiff's opposition to the stay "did not justify denying Vivid Seats' request for a stay, taking into account the economies to be gained from staying this litigation," *id*.

Notwithstanding its representations to the Court and the pendency of the stay Order, Defendant admits in its opposition that "on or about June 9, 2021," its attorneys mailed settlement offers to 333 former employees, including the Plaintiff, that included a Cover Sheet, Limited Release of Claims Agreements ("Limited Release"), and Notice of Retention Policy and Consent Form ("Consent Form") (collectively, "settlement documents"). (*See* Doc. 45-1, Declaration from Alexandra S. Davidson ("Davidson Decl."), ¶ 4; *id*. at Exhs. A, B, C).[2] Ms. Davidson, one of the attorneys representing Defendant, avers that no settlement offers were made to current employees, that of the 333 settlement offers that were mailed, 97 were returned undeliverable, and 16 individuals returned their signed agreements. (*Id.* ¶¶ 3, 5, 6). Ms. Davidson further avers that "only Vivid Seats made the settlement offers," but that "due to Vivid Seats lack of resources, it delegated the 'mailing' function of these offers to me and provided me with a list of formers employees for the relevant time-period in the complaint, which included Plaintiff." (*Id.* ¶ 10). Finally, Ms. Davidson avers that she in turn "delegated the mailing function to an administrative assistant who inadvertently mailed Plaintiff the same settlement offer as everyone else." (*Id.* ¶ 11).

In other words, after convincing the Court to stay this case for the reasons set forth above,

---

[2] *See also* Doc. 43-2, Declaration of Samuel Donets, ¶ 4; *id.* Exhibits A and B.

Defendant did just the opposite—its attorneys mailed settlement documents to 333 former employees in an attempt to settle their potential claims under the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.,* for pennies on the dollar and without disclosing the actual (or potential, *see White Castle* appeal) statutory damages available, without informing these former employees as to the status of the case or the pendency of the appeals relied upon to obtain the stay, without providing a copy of the complaint, and without identifying Plaintiff's attorneys. Contrary to its feigned concerns about undue burden, expense, attorneys' fees, and "unnecessary" motion practice, Defendant's actions predictably resulted in the Rule 23(d)(1) motion currently pending before the Court. Defendant's actions were only discovered because Defendant's counsel (via an administrative assistant) mailed the settlement documents directly to the Plaintiff.[3]

Defendant has given the stay order entered by the Court the back of its hand. Defendant's opposition never bothers to address that fact. (*See* Opp. at 1-15). Instead, Defendant asserts that its claims of financial distress are real and that the COVID-19 pandemic has hurt its business, "resulting in a reduction-in-force and other cost-reduction measures." (Opp. at 3 n.2).

Defendant misses the point. Having made the representations to the Court set forth above, and having obtained a stay based on those representations, Defendant did not "stop litigating" to preclude undue burden, expense, and unnecessary motion practice expense so that it could devote its energies to its business rather than to defending a class action. Instead, Defendant attempted to

---

[3] Model Rule of Professional Conduct 4.2 prohibits a lawyer from communicating "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in that matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." *See also* LR 83.50 (adopting the Model Rules from the American Bar Association). Here, Plaintiff was clearly a represented party, and he was mailed a Cover Sheet, Limited Release, and Consent Form in an envelope bearing the name "Seyfarth" on the address label and which included a prepaid return envelope addressed to Vivid Seats that listed "Seyfarth" as the return address. (*See* Doc. 43-2, Donets Decl., ¶ 4; *id.* at Ex. B).

shrink the size of the potential class with its $100 offer, its "Limited Release," and its "Consent Form," all after a stay order was entered at its request. Defendant's conduct here is similar to that of the defendants in *Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013), who also sought to shrink the size of a class (with a arbitration agreement) during the pendency of a stay that defendants had requested. The court found defendants' behavior was "highly improper" in light of the court's stay order and stated that defendants "abusive tactics must be remedied," which the court did through a corrective order. *Id*. at 956-57.

**II.     Defendant's argument that the settlement documents sent to potential class members were "lawful" or "factually correct" is wrong—the documents concealed material information in an effort to settle claims for pennies on the dollar and were thus "abusive communications" subject to a remedy under Rule 23(d)(1).**

Defendant argues that the Cover Sheet, Limited Release, and Consent Form are "lawful," Opp. at 4, 5, and that the information contained in them is "factually correct" and therefore was not "coercive, misleading, or abusive," *id*. at 6-7. Defendant's conclusory argument misses the mark. The issue here is whether Defendant failed to provide enough information to the targets of its "settlement documents," not whether the information that was provided was "factually correct."

As Plaintiff demonstrated in its opening brief, pre-certification communications with potential class members do not have to be false to be improper because potential class members can be misled through omissions and failure to provide enough information. (*See* Pl. Mem. at 10-13) (citing *City of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (holding that there need not be a misstatement in a communication and that putative class members can be misled through omissions and failure to provide enough information); *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015) ("[c]ourts in this district have limited communications, as well as invalidated agreements that resulted from those communications, when they omitted critical information or were otherwise misleading or

4

coercive") (collecting cases); *Cheverez v. Plains All Am. Pipeline, LP*, 2016 WL 861107, at *4 (C.D. Mar. 3, 2016) ("Courts routinely hold that releases that are misleading where they do not permit a putative class member to fully evaluate his likelihood of recovering through the class action").

Indeed, some of the very authorities cited by Defendant recognize the prohibition on "misleading" statements that contain "material omissions" or "conceal material information." (*See* Doc. 45, Opp. at 5 n.6) (citing *Tolmasoff v. General Motors, LLC*, 2016 WL 3548219, at *11 (E.D. Mich. June 30, 2016) ("Examples of ***abusive communications*** are those that are false or misleading, ***contain material omissions***, or are coercive or intimidating") (emphasis added) (citing *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (quoting *Cox Nuclear Med. V. Gold Cup Coffee Servs., Inc*., 214 F.R.D. 696, 698 (S.D. Ala. 2003); Manual for Complex Litigation (Fourth) § 21.12 (explaining that a party may not "give false, misleading, or intimidating information, ***conceal material information***, or attempt to influence the decision about whether to request exclusion from a class") (emphasis added).

Defendant has clearly violated these principles. Although this is a case for statutory damages under BIPA, and Defendant and its attorneys were no doubt aware of the statutory damages available under BIPA ($1,000 per violation for negligent conduct, *see* 740 ILCS § 14/20(1), and $5,000 per violation for intentional or reckless conduct, *id.* at § 14/20(2), the Cover Sheet, Limited Release, and Consent Form say ***absolutely nothing*** to the 333 former employee targets of the settlement offer regarding the available statutory damages and instead vaguely state that the $100 offer "may be more or less than what you ultimately recover in the Lawsuit. . ." (Donets Decl., Doc. 43-2, Ex. A (Cover Sheet)).

Making a bad situation worse, Defendant responds to its failure to disclose by saying: "The

notion that Vivid Seats intended to conceal the statutory damages available under BIPA is nonsense. Curious minds could easily Google BIPA to learn about the statutory damages available." (Opp. at 4 n.4). Regardless of what Defendant purportedly intended, its "settlement documents" failed to set forth the statutory damages available under BIPA, and in so doing undeniably made a "material omission" and "concealed material information." Pursuant to Defendant's own authority, such communications are by definition "abusive." *See Tolmasoff,* 2016 WL 3548219, at *11.

Moreover, while Defendant may find its "curious minds" remark amusing, Plaintiff does not. Defendant furtively sought to remove 333 potential class members from this case for $100 a piece without revealing that statutory damages at a minimum (in a successful case) would have been ten times $100 for negligent conduct, and fifty times $100 for conduct found to be reckless or intentional, and it did so while the case was stayed (at its request). In fact, Defendant succeeded in exploiting its knowledge gap with 16 former employees. (Doc. 45-1, Davidson Decl. ¶ 6).

Without knowledge of the statutory damages available under BIPA, the targets of Defendant's secret settlement campaign do not (and did not) have the information necessary to make an informed choice as to whether to take the $100 offer and sign the Consent Form. It is self-evident that one of the first things a BIPA defendant would want to know is the potential statutory damages available, and Plaintiff submits it is highly unlikely if not impossible that such defendants would be told by their attorneys to "Google BIPA" if you're "curious" about the available statutory damages. On this basis alone, Plaintiff has met its burden of showing that Defendant has engaged in "misleading" or "abusive" communications with the potential class members by concealing material information, namely, the potential statutory damages. *Piekarski,* 4 F. Supp. 3d at 955.

Defendant's citation to *Reid v. Unilever United States, Inc.*, 964 F. Supp.2d 893, 926 (N.D.

Ill. 2013), and its discussion regarding coercive communications, cannot somehow cure Defendant's material nondisclosures. (*See* Opp. at 4, 5). First, unlike the instant case, *Reid* did not involve the nondisclosure of liquidated statutory damages, making it inapplicable on its face. Second, it was not until Defendant filed its opposition on August 12, 2021, that Plaintiff was made aware of the claim that settlement documents were sent only to former employees. In fact, Defendant's counsel had previously refused to discuss any aspect of its settlement campaign when it was first discovered by Plaintiff. (*See* Doc. 43-1, Pl.'s Mem. at 7, 8).

Third, the *Reid* court's discussion of "coercion" under Rule 23(d), and Defendant's attempt to apply that discussion here, is simply not relevant. The issue here is whether Defendant's failure to disclose the statutory damages under BIPA, and its failure to disclose the BIPA appeals, *see infra*, including the *White Castle* appeal that may substantially increase the statutory damages available, constitute material omissions and/or are an effort to conceal material information. Whether Defendant's conduct has also been coercive is immaterial because the omissions/concealment described herein have been misleading. *See Friedman v. Intervet, Inc.*, 730 F. Supp. 2d 758, 764 n.6 (N.D. Ohio 2010) (an ongoing business relationship, particularly employer-employee, is often relevant to determine whether a defendant's communications are coercive, but not where the analysis addresses whether the communication was misleading).

Defendant also failed to disclose the pendency of the following appeals: *Tims v. Black Horse Carriers, Inc.*, App. No. 1-20-0563 ("*Tims*") and *Marion v. Ring Container Technologies, LLC*, No. 3-20-0184 ("*Marion*"), both of which address the question of which statute of limitations period applies to BIPA claims; *McDonald v. Symphony Bronzeville Park, LLC* ("*McDonald*"), which addresses whether a BIPA claim is preempted by the Illinois Workers Compensation Act; and *In Re: White Castle System, Inc.*, No. 20-8029, currently pending in the Seventh Circuit, which

addresses whether a private entity violates BIPA only when it first collects an individual's biometric information, or whether a violation occurs each time a private entity collects or discloses the biometric data in violation of 740 ILCS § 15(b) or 15(d).

Defendant argues that Plaintiff cites no authority for the proposition that it was required to inform putative class members of the status of pending appeals. (Opp. at 7). Defendant further argues that such a requirement "makes no sense here because Plaintiff's claims may be rendered time-barred by *Tims*, *Marion*, or *White Castle*, or moot by *McDonald*," and that "Why on earth would Vivid Seats be required to explain the vulnerability of Plaintiff's lawsuit to its former employees?" (*Id*.) Finally, Defendant predicts that if it had "discussed the pending appeals and their potential to nullify the putative class members' claims, surely Plaintiff would have characterized Vivid Seats's actions as 'misleading' and 'coercive,'" and thus Defendant "chose not to speculate about the outcome of those appeals in its settlement offers to its former employees." (*Id*. at 7, 8).

At the outset, it is unclear why Defendant would have to "speculate" about the "outcome" of *Tims*, *Marion*, *White Castle*, and *McDonald*. Instead, a brief description of what is at issue in those appeals is all that should have been provided, not a handicapping of the outcomes. Again, the issue is whether knowledge of the pendency of these appeals would be necessary to allow the putative class member to "fully evaluate the likelihood of recovering through the class action." *Cheverez*, 2016 WL 861107, at *4. As with the BIPA statutory damages, it is also presumed that a defendant in a BIPA case would want to know that these appeals were pending before deciding what to do going forward. Indeed, in entering the stay, the Court found in part that it was "appropriate" to stay the case pending the *Tims* and *Marion* decisions in that said decisions "could control the Court's resolution of the timeliness issue ***and guide the parties' positions as they***

*proceed with this case*." (Doc. 37, Order at 3) (emphasis added).

Defendant offers no reason why potential class members that are being asked to settle a case for one tenth, one fiftieth, or possibly more of the potential statutory damages under BIPA need not be provided knowledge of those appeals to "guide" them (at least in part) as to whether to except the $100 offer and sign the Consent Form (a requirement for receipt of the $100). Defendant asked the Court to stay this case in part because without a stay it would be "forced to continue to defend claims and engage in discovery on claims that may be completely time-barred, preempted, or significantly reduced in scope and value." (Doc. 32, Mot. ¶¶ 8, 9). Defendant's position that the "BIPA cases" on appeal (and the issues raised therein, including the *White Castle* damages issue) are on the one hand enough to stay the case, but on the other hand need not be disclosed to the former employee targets' of Defendant's clandestine settlement campaign before they decide whether to take the $100 settlement offer is irreconcilable.

Defendant's insistence on "authority" for the proposition that it was required to inform putative class members of the status of pending appeals fails to understand that Rule 23(d) does not expressly impose an affirmative obligation to provide "particular information," but instead authorizes this Court to make orders to manage class action communications. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 268 (S.D.N.Y. 2020). "In light of *Gulf Oil's* requirements for crafting such orders, courts '[examine] the entirety of defendant's conduct and communications [and there is no] statutory rule or case law that requires defense counsel to give specific information and instructions to putative class members, nor [are there] any 'magic words' that must be disclosed [in communications].'" *Id.* (citing *Bobryk v. Durand Glass Manufacturing Co., Inc.*, 2013 WL 5574504, at *6 (D.N.J. Oct. 9, 2013). Rule 23(d) was intended specifically to provide the court with broad authority to ensure 'the fair and efficient conduct of the action." Fed.

R. Civ. P. 23, Advisory Committee Notes (1966 Amendment). "The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *Slaight*, 2018 WL 4334329, at *3 (citations omitted).

Here, Defendant's failure to disclose the existence of appeals that Defendant argues may render Plaintiff's and potential class members' claims time-barred (by *Tims*, *Marion*, or *White Castle*), or moot (by *McDonald*) is a material omission of critical information that should have been provided to potential class members so that they had the requisite information necessary to decide whether to accept the $100 offer. Indeed, Defendant's argument in support of the claim that its $100 offer was "fair and reasonable" (and therefore potential class members were not "prejudiced" by Defendant's nondisclosures, Opp. at 14) inadvertently makes the case that Defendant concealed material information under Rule 23(d):

> And given the probability that Plaintiff's claims ultimately fail (because they are time-barred and/or preempted by the Workers Compensation Act) as a result of one or more of the upcoming decisions in the pending BIPA appeals, Vivid Seats settlement offer was fair and reasonable, and one in which the putative class members were free to accept or reject.
>
> The pendency of the BIPA appeals present serious obstacles to Plaintiff's lawsuit. In *McDonalds v. Symphony Bronzeville Park, LLC*, the Illinois Supreme Court will decide whether the plaintiff's claim for statutory damages under BIPA is barred by the Exclusivity Provisions of the Illinois Worker's Compensation Act.

(Opp. at 14).[4] Defendant's reliance on the "BIPA" appeals to claim its offer of one tenth or one

---

[4] Defendant cites to *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001), and argues that "The Illinois Supreme Court's decision to grant defendant's petition for leave to appeal provides a 'compelling reason' to doubt that the Illinois Appellate Court 'stated the law correctly.'" In fact, the Seventh Circuit in *Edwards* stated:

> Although persuasive, the Illinois Appellate Court decisions do not bind us. When a state supreme court has not spoken on an issue, the decisions of the state's

10

fiftieth of the statutory damages available under BIPA (and possibly much more after of the *White Castle* decision) is "fair and reasonable" eviscerates its argument that these appeals and the statutory damages under BIPA should not have been disclosed to potential class members.

In fact, it cannot be credibly argued that the failure to disclose the *White Castle* appeal while offering $100 to settle the case is not a concealment of a material fact. Defendant argues that "to the extent" Plaintiff argues Defendant was required to inform putative class members of the "*White Castle* issue" because Plaintiff intends to pursue a "per-scan" damages theory (resulting in damages of $4,000 to $20,000 a day based on 4 scans a day), such an argument "lacks merit" for a variety of reasons, including that White Castle's counsel has "disavowed" the "per-scan" theory, and that such a theory would result in substantial damages, raising due process and Eighth Amendment concerns. (Opp. at 8). Defendant argues:

> . . . just as Vivid Seats did not attempt to influence putative class members by *arguing* in its notice[5] that Plaintiff's claims may be time-barred and/or preempted by the Workers Compensation Act, nor did it speculate about what the Seventh Circuit may say about an issue that was not before the District Court. Once again, Vivid Seats wisely chose not to wade into such murky waters, keeping its communications fact-based, without foisting its interpretation of the state of the law upon putative class members.

(Opp. at 8, 9).

Defendant again defaults to its confessed inability to objectively describe what is at issue in an appeal, in this case, the "*White Castle* issue," without taking a position as to the outcome of that appeal. Defendant's claim that it "wisely chose not to wade into such murky waters" in failing

---

> intermediate appellate courts are authoritative **unless we have** a compelling reason to doubt that they have stated the law correctly.

*Edwards,* 272 F.3d at 470 (emphasis added) (citations omitted).

[5] The Cover Sheet, Limited Release, and Consent Form do not constitute a "notice," but are instead an attempt to settle claims for a fraction of the possible statutory damages without (among other things) informing as to the possible amount of said statutory damages.

11

to disclose to the former-employee targets of its $100 settlement offer that at issue in *White Castle* is the "per-scan" damages theory (resulting in $4,000 to $20,000 a day) would be laughable had not 16 potential class members signed Limited Releases and Consent Forms without being advised by the Defendant of the pendency of and the issues in the *White Castle* appeal.

Moreover, as to Defendant's attack on the district court's opinion underlying the *White Castle* appeal in the Seventh Circuit—*Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 730 N.D. Ill. 2020), the *Cothron* court first noted that the Illinois Supreme Court has held that a person is "'aggrieved within the meaning of Section 20 of the [BIPA] and entitled to seek recovery under that provision'" whenever "a private entity fails to comply with one of section 15's requirements." (citing *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019)). The court also held that the text of BIPA, which the court held it was bound to follow, makes clear that ***each violation*** of 740 ILCS § 14/15(b) and 14/15(d) is a *separate violation*. *Id*. at 731-34.

The court acknowledged that "large damage awards may result from this reading of the statute," but that "as the Illinois Supreme Court explained in *Rosenbach*: 'subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses for each violation of the law is one of the principle means that the Illinois legislature adopted to achieve BIPA's objectives of protecting biometric information.'" *White Castle Sys.*, 477 F. Supp. 3d at 733 (citing *Rosenbach*, 129 N.E.3d at 1207). The court cited to the Illinois Supreme Court's "repeated" holdings that where statutory language is clear, it must be given effect by the courts "even though the consequences may be harsh, unjust, absurd, or unwise," *id*. at 734 (citing *Petersen v. Wallach*, 764 N.E.2d 19, 24 (Ill. 2002). The court then stated:

> As a result, the Court is bound by the clear text of the statute. If the Illinois legislature agrees that this reading of BIPA is absurd, it is of course free to modify

> the statute to make its intention pellucid. But it is not the role of a court—particularly a federal court—to rewrite a state statute to avoid a construction that may penalize violations severely. In any event, this Court's ruling is unlikely to be the last word on this subject. On appeal—and possibly upon certification to the Illinois Supreme Court—White Castle will have ample opportunity to explain why it is absurd to suppose that the legislature sought to impose harsh sanctions on Illinois businesses that ignored the requirements of BIPA for more than a decade.
>
> In sum, the Court concludes that Ms. Cothron has alleged multiple timely violations of both Section 15(b) and Section 15(d). According to BIPA Section 20, she can recover "for each violation." 740 ILCS 14/20.

*Id.* In other words, contrary to Defendant's argument, the "per/scan" interpretation in fact has merit. However, the issue before this Court is not how the *White Castle* appeal will turn out but is instead whether Defendant's failure to disclose the existence of the *White Castle* appeal was violative of Rule 23(d)(1). Plaintiff submits the discussion above makes clear the answer to that question is yes.

In sum, like the failure to disclose BIPA statutory damages, Plaintiff has also met its burden of showing that Defendant has engaged in "misleading" or "abusive" communications with the potential class by again concealing material information, this time, the appeals in *Tims*, *Marion*, *McDonald*, and perhaps most egregiously, the appeal in *White Castle*. *Piekarski,* 4 F. Supp. 3d at 955. Regardless of how these appeals are decided, there can be no question that Defendant was obligated to inform potential class members that under BIPA they may be entitled to $1,000 or $4,000 and possibly $4,000 to $20,000 per day for Defendant's violations of BIPA before they decided whether to accept a $100 offer.

**III. Defendant's attempt to demonstrate its own misconduct is not as egregious as in other Rule 23(d) cases is wrong and does not excuse its misleading "settlement documents."**

Defendant attempts to distinguish certain authorities cited by Plaintiff by comparing degrees of fault. That is not the measuring stick. These cases were cited for the principles set forth in Plaintiff's opening brief, Doc. 43-1, at 11, and *supra*, at 4-5. But even on the merits, Defendant's

attempts to distinguish are unpersuasive. For example, Defendant argues that *City of Santa Clara*, 2010 WL 2724512, at *4, is inapposite because in that case, the defendant did not provide a copy of the complaint but instead directed the putative class members to the clerk's office, and the settlement letter did not contain a summary of the complaint, an explanation of the claims, the current status of the case, or that the Ninth Circuit had" blessed" plaintiff's legal theory. (Opp. at 9). Here, putative class members were not provided a copy of the complaint but instead had to request one from their former employer, the settlement documents did not explain the current status of the case, *i.e.*, that it was stayed and why, did not provide an explanation of the statutory damages available, and did not state that the Seventh Circuit was considering the "*White Castle*" issue.

Defendant's argument that the facts in *Piekarski* "have nothing in common with the facts here," Opp. at 10-11, ignores that like the defendants in *Piekarski*, Defendant here, ***after a stay was entered at its request***, and without moving to modify the stay or notify Plaintiff or the Court, attempted to winnow down the size of the class. In *Piekarski*, the abusive communication was through an arbitration program ("DRA") that the court concluded employees would not understand and would be bound to arbitrate their claims. Here, the abusive communication was through a settlement offer of $100 that failed to disclose and/or concealed material information, namely, the BIPA statutory damages available (that are at least 10 and may be 50 times more than the $100 offer), and an appeal that may substantially increase those statutory damages (*White Castle*).

Defendant's claim that the corrective notice ordered in *Piekarski* is "very close" to Defendant's Cover Sheet, and that Defendant has "already provided almost the *exact sam*e information that the *Piekarski* court ordered as a corrective notice, *see* Opp. at 11-21 (emphasis in original), is wrong and irrelevant. The issue here is Defendant's concealment/omission of material facts regarding BIPA damages and of the pendency of the BIPA appeals, not a confusing

14

arbitration clause, as in *Piekarski*. Moreover, this argument is the bookend to Defendant's claim that the information in the settlement documents was "factually correct," and it fails for the same reason—the information disclosed by Defendant in the settlement documents concealed the key material facts necessary to make an informed decision as to the $100 offer, information Defendant possessed, and information Defendant knew it had not disclosed to any of its former employees. Defendant's varied attempts to explain away those dispositive facts simply do not work. As in *Pierkarski*, "Defendant's abusive tactics must be remedied." 4 F. Supp. 3d at 956.

## Conclusion

Plaintiff in its opening brief and in this reply has met its burden to show that Defendant has engaged in misleading and abusive communications with the potential class. The facts as to Defendant's material omissions are undisputed—the Cover Sheet, Limited Release, and Consent Form do not contain sufficient information for the targeted former employees to accept or not accept the $100 offer from Defendant. Plaintiff respectfully submits the Court has the requisite clear record under Rule 23(d)(1) to invalidate the 16 Limited Releases and Consent Forms obtained by Defendant (and any others that come to light), and to enter the further relief Plaintiff set forth its prayer for relief in its opening brief, which it reasserts here. (*See* Doc. 43-1, at 15).

Dated: August 19, 2021

    Respectfully submitted,

    SAMUEL DONETS, individually and on behalf of all others similarly situated

    By: /s/ Wallace C. Solberg
    Wallace C. Solberg
    Ryan M. Kelly
    ANDERSON + WANCA
    3701 Algonquin Road, Suite 500
    Rolling Meadows, IL  60008
    (847) 368-1500

wsolberg@andersonwanca.com
rkelly@andersonwanca.com

Nick Wooten
NICK WOOTEN, LLC
5125 Burnt Pine Drive
Conway, Arkansas 72034
(833) 937-6389
nick@nickwooten.com

Rusty A. Payton
PAYTON LEGAL GROUP
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Arthur C. Czaja
LAW OFFICE OF ARTHUR CZAJA
7521 N. Milwaukee Avenue
Niles, Illinois 60714
(847) 647-2106
arthur@czajalawoffices.com

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on August 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                              s/ Wallace C. Solberg
                                              Wallace C. Solberg