# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL DONETS,<br>individually and on behalf of all<br>others similarly situated, | | |
| Plaintiff, | | No. 20-cv-03551<br>Judge Franklin U. Valderrama |
| v. | | |
| VIVID SEATS LLC, | | |
| Defendant. | | |

## ORDER

Plaintiff Samuel Donets (Donets), a former employee of Defendant Vivid Seats LLC (Vivid Seats) brings this proposed class action against Vivid Seats for alleged violations of the Illinois Biometric Information Privacy Act (BIPA). R. 24, Am. Compl.[1] Vivid Seats moved to dismiss, R. 30, Mot. Dismiss, and to stay the case based on appeals pending in the Illinois Appellate Court and the Seventh Circuit, R. 32, Mot. Stay. Following briefing on the motions, the Court granted Vivid Seats' motion to stay[2] but denied the motion to dismiss without prejudice with leave to refile once

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

[2] The Court granted the stay in part and denied it in part. Stay Order. The Court stayed the case pending the Illinois Appellate Court's decisions in *Tims v. Black Horse Carriers*, App. No. 1-20-0563 and *Marion v. Ring Container Techs., LLC*, App. No. 3-20-0184 and pending the Seventh Circuit's decision in *In Re: White Castle Sys., Inc.*, No. 20-8029. *Id.* It declined to stay the case pending the Illinois Supreme Court's decision in *McDonald v. Symphony Bronzeville Park, LLC*. *Id.*

Since the Court granted the stay, the Illinois First District Appellate Court issued its decision in *Tims. Tims v. Black Horse Carriers, Inc.*, 184 N.E.3d 466 (Sept. 17, 2021). The court established a 5-year limitations period for BIPA claims under 740 ILCS 14/15(a), (b), and (e), and a 1-year limitations period for BIPA claims under 740 ILCS 14/15(c) and (d). *Id.*, at *6. The Illinois Supreme Court subsequently granted a petition for leave to appeal, and the appeal is currently pending. 184 N.E.3d 1029 (Ill. 2022). On February 14, 2022, the defendant in *Marion* filed a motion for direct appeal under Illinois Supreme Court Rule 302(b) and/or for a supervisory rule under Rule 383. On December 23, 2021, pursuant to Illinois Supreme

the stay is lifted. R. 37, Stay Order. Donets filed a motion to lift the stay for the limited purpose of granting Donets relief pursuant to Federal Rule of Civil Procedure 23(d)(1). R. 43, Mot. R. 23(d) Relief. The Court granted the motion in part to the extent that it lifted the stay for purposes of resolving Donets' motion. R. 44. Now before the Court is the portion of Donets' motion requesting that the Court issue an order under Rule 23(d)(1). For the following reasons, Donets' motion is granted.

## Statement

On June 17, 2020, Donets filed a class action complaint against his former employer, Vivid Seats, alleging that Vivid Seats violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*, when, among other things, it captured his biometric information or biometric identifiers without his consent. R. 1. Donets subsequently filed an amended complaint, and on November 20, 2020, Vivid Seats moved to dismiss the amended complaint, or alternatively, stay the case based on appeals pending in the Illinois Appellate Court and the Seventh Circuit. Mot. Dismiss; Mot. Stay. As to the latter, Vivid Seats asserted that each pending appeal and petition will inform the Court's analysis regarding the statute of limitations and IWCA's exclusive remedy provisions. Mot. Stay. Vivid Seats maintained that a stay was "appropriate to avoid undue burden and expense." *Id.* ¶ 5. Vivid Seats further stated that a "stay would permit Vivid Seats to dedicate its limited resources to the operation of its business." *Id.* ¶ 8. On December 15, 2020, the Court granted the stay in relevant part and denied the motion to dismiss with leave to refile once the stay is lifted. Stay Order at 5–6. In granting the stay, the Court reasoned that a stay would conserve the parties' and judicial resources. *Id.* at 5.

On or about June 9, 2021, while the stay was still in place, Vivid Seats sent settlement offers to 333 former employees in the form of a cover letter (Cover Letter), a "Limited Release of Claims Agreement" (Limited Release), a "Notice of Retention Policy and Consent Form" (Consent Form), and a pre-addressed, stamped envelope returnable to Vivid Seats' Legal Department (collectively, the Communications). R. 45-1, Davidson Decl. ¶ 4. Vivid Seats delegated the "mailing function" of the offers to Vivid Seats' counsel. *Id.* ¶ 10. Of the 333 settlement offers that were mailed, 97 were returned as "undeliverable" and 16 individuals returned their signed agreements. *Id.* ¶ 6. The Cover Letter stated:

On June 17, 2020, a lawsuit was filed against Vivid Seats, LLC ("Vivid Seats") by a former employee, Samuel Donets ("Plaintiff"), in the United States District Court for the Northern District of Illinois, which is captioned as

Court Rule 20, the Illinois Supreme Court agreed to answer the question of law certified to the Court by the Seventh Circuit in *Cothron v. White Castle System, Inc.* No. 20-2302. Oral argument before the Illinois Supreme Court in *Cothron* is currently scheduled for May 17, 2022. On February 3, 2022, the Illinois Supreme Court held that the exclusivity provision of the Workers' Compensation Act did not bar employee's claim for liquidated damages under BIPA. *McDonald v. Symphony Bronzeville Park, LLC,* 2022 IL 126511 (Feb. 3, 2022).

*Samuel Donets, individually and on behalf of all others similarly situated v. Vivid Seats, LLC,* Case No. 1-20-cv-03551 (the "Lawsuit"). The Lawsuit is a purported class action brought under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* and the Plaintiff alleges that Vivid Seats violated BIPA in connection with a time clock you may have used while you were employed with Vivid Seats. If you would like a copy of the Lawsuit, please contact legal@vividseats.com.

Vivid Seats disputes the allegations in the Lawsuit and intends to vigorously defend itself against it. In an abundance of caution, however, Vivid Seats is providing the enclosed notice of its retention policy and consent form for your review and signature. Vivid Seats discontinued use of the time clock at issue in May 2016. Plaintiff and Vivid Seats dispute whether Vivid Seats violated BIPA, and the Judge has not decided whether BIPA was violated or whether the Lawsuit can proceed as a class action.

Vivid Seats is offering you a settlement to put this matter to rest. In exchange for receiving a [1] signed Limited Release of Claims Agreement and [2] a signed notice of retention policy and consent form, Vivid Seats will pay you a lump sum of **$100.00** within 45 days of receiving your properly signed documents. **The two documents you must sign to receive the money are enclosed.** If you want to accept this offer—which may be more or less than what you may ultimately recover in the Lawsuit—please mail your signed copies of these documents to legal@vividseats.com or, in the alternative, using the self-addressed, stamped envelope included to: [Vivid Seats LLC's address].

Davidson Decl., Exh. A, Cover Letter.

The Limited Release contains nearly identical language. Davidson Decl., Exh. B, Limited Release. In addition, the Limited Release states that "by entering into this Agreement, you and Vivid Seats agree to settle, fully and finally, all pending and potential claims arising out of your employment with Vivid Seats relating to any claim you may have under BIPA, including but not limited to the allegations in the Lawsuit . . . ." *Id.* at 1. The Limited Release further provides that "[y]ou give up any claim that is asserted in the Lawsuit or that could have been asserted, or that will be asserted in the Lawsuit. *Id.* at 2. It continues, stating, "[b]esides releasing claims covered by the Limited Release . . . in Section 2, you agree to never sue Vivid Seats for any reason covered by the Limited Release of Claims." *Id.* The Limited Release further states that "[b]y signing this Agreement you give up all rights to money or other individual relief based on an agency or judicial decision, including but limited to, class or collective action rulings. *Id.*

The Consent Form provides that "[b]y signing below, I acknowledge that I have been advised and understand that Vivid Seats, LLC (the 'Company') . . . used a timekeeping system that may have captured 'biometric information' and/or a

'biometric identifier' as those terms are used in [BIPA]. . . . The Company ceased using the time clock in May of 2016, and the Company has not retained, and does not possess, any employee templates or associated data. Davidson Decl., Exh. C, Notice of Retention. The Consent Form further states that "I hereby acknowledge that I have received this notice of the Company's retention policy, and that I voluntarily consent to the Company's . . . prior use of the timekeeping system . . . and hereby acknowledge my voluntary consent to the Company having provided such templates and associated data to its vendors . . . . *Id.*

On June 11, 2020, Donets received from Vivid Seats the Cover Letter, Limited Release, and Consent Form. R. 43-2, Donets Decl. ¶ 3. At no time did Donets or his counsel consent to Vivid Seats counsels' communicating directly with Donets. R. 43-3, Wooten Decl. ¶ 10.

Donets has filed a Motion to Lift the Stay for Limited Purpose of Granting Donets relief pursuant to Federal Rule of Civil Procedure 23(d), arguing that the communications sent to prospective class members were misleading, coercive, and incomplete. Mot. R. 23(d) Relief. The Court previously granted the motion in part, lifting the stay for purposes of resolving the portion of the motion requesting that the Court issue an order under Rule 23(d)(1), which portion is now before the Court.

## Legal Standard

Federal Rule of Civil Procedure 23 governs class actions. Under Rule 23, district courts have "both the duty and the broad authority to exercise control over a class action" due to the potential for abuse of the class action process. *Gulf Oil Co., v. Bernard*, 452 U.S. 89, 100 (1981). Rule 23(d) provides that a court, in conducting a class action, "may issue orders that require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action." Fed. R. Civ. P. 23(d).

"Generally speaking, a defendant has a right to communicate settlement offers directly with putative class members." *Tolmasoff v. Gen. Motors, LLC*, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) (internal citations and quotation omitted). Pre-certification communications to prospective class members "are considered constitutionally protected speech." *In re Apple Inc. Device Performance Litig.*, 2018 WL 4998142, at *4 (N.D. Cal. Oct. 15, 2018) (internal citations omitted). However, communications "that are misleading pose a threat to the fairness of the litigation process, the adequacy of representation and the administration of justice." *Id.* Accordingly, a court may exercise its authority under Rule 23(d) to halt or limit such conduct. *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008). Communications that are violative of Rule 23's principles include those that

"misrepresent the status or effect of the pending action[, as they] have an obvious potential for confusion and/or adversely affecting the administration of justice." *Gulf Oil*, 452 U.S. at 101 n.12. "An order under *Gulf Oil* does not require a finding of actual misconduct." *In re Apple Inc Device Performance Litig*, 2018 WL 4998142, at *4 (internal citation and quotation omitted). "[T]he key is whether there is a potential interference with the rights of the parties in a class action." *Id.* (internal citation and quotation omitted).

The movant bears the burden of showing that the communication is abusive or misleading, in that it threatens the proper functioning of the litigation. *Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) (citing *Gulf Oil*, 452 U.S. at 102). Any order limiting communications between the parties and potential class members "should be based on a clear record and specific findings that reflect a weighing of the need for the limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. "Even if there is clear evidence that a party has engaged in abusive communications with the potential class members, a court may only impose 'the narrowest possible relief which would protect the respective parties.'" *Tolmasoff*, 2016 WL 3548219, at *11 (quoting *Gulf Oil* at 102). When assessing whether a communication is abusive, a court must examine the facts in totality. *Jubinville v. Hill's Pet Nutrition, Inc.*, 2019 WL 1584679, at *8 (D.R.I. Apr. 12, 2019) (internal citations omitted).

## Analysis

As an initial matter, Donets points out that Vivid Seats represented to the Court in its motion to stay that "a stay would conserve the parties' and judicial resources and save expenditures on potentially costly motion practice and discovery." Mot. R. 23(d) Relief at 4. Yet, while the stay was in place, Vivid Seats solicited Donets—and 332 other former employees of Vivid Seats—directly with offers to settle the case for $100.00. *Id.*; R. 46, Reply at 2. Donets argues that the Court should exercise its authority to order corrective action under Rule 23(d), because the Cover Letter and Limited Release are misleading in that they: (1) fail to inform potential class members of the statutory damages available under BIPA, which are $1,000 for negligent violations and $5,000 for intentional violations and (2) say nothing about the pending appeals that form the basis of the stay, *White Castle*, *Tims*, and *Marion*. Mot. R. 23(d) Relief at 5, 9. Donets insists that, by omitting this information, the Cover Letter and Limited Release are misleading because they do not contain enough information for potential class member recipients to make an informed choice as to whether to accept $100 on a statutory claim that provides liquidated damages of $1,000 or $5,000. *Id.* 9. Courts, submits Donets, have found communications from defendants to potential class members before class certification to be misleading when those communications omit critical information, and accordingly have ordered corrective action Mot. R. 23(d) Relief at 4 (citing *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, *2 (N.D. Cal. Nov. 2, 2015) (finding communications with former employee putative class members misleading where

they "confusingly suggest[ed] [potential class members] could not contact Plaintiffs' counsel, and . . . omitt[ed] mention that FLSA claims . . . would require judicial approval to be released" and invalidating any settlement releasees signed by putative class members); *Cheverez v. Plains all Am. Pipeline, LP*, 2016 WL 861107, at *4 (C.D. Cal. Mar. 3, 2016) (finding communications misleading where advertisements did not mention pending class action or right to obtain compensation other than through claims process, as well as settlement agreement release that misleadingly describes the claims process as a similar alternative to the class action, and invalidating signed releases); *Gonzalez v. Preferred Freezer Services, LBF, LLC,* 2012 WL 4466605 (C.D. Cal. 27, 2012) (finding settlement release sent to employee putative class members to be misleading where it "did not state when this unnamed lawsuit was filed, the name of the former employee, the names of the employee's attorneys, the attorneys' contact information, or the period of time covered by the release," and ordered defendant to provide plaintiff contact information of putative class members who received release in order to issue corrective notice).

The Consent Form, asserts Donets, is also misleading "in that it improperly seeks an admission that could arguably nullify the potential class member's current cause of action under BIPA." Mot. R. 23(d) Relief at 12. Donets points out that the Consent Form states that the potential class member "voluntarily" consented to Vivid Seats prior use of the very policy that violates BIPA. *Id.* Donets contends that the Communications, through the Consent Form, are abusive in that they "seek[] to wring out of these potential class members an after-the-fact written consent regarding [Vivid Seats'] earlier violations of BIPA." *Id.* at 7.

Therefore, concludes Donets, the Court should invalidate any Limited Releases and Consent Forms obtained by Vivid Seats. Mot. R. 23(d) Relief at 13–14 (citing, among other cases, *Piekarski*, 4 F. Supp. 3d 952; *Cnty. of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010)).

Vivid Seats responds that the Court should deny the motion because the Communications to its former employees, who are not represented in this action, were proper. R. 45, Resp. For starters, Vivid Seats notes that a defendant and defendant's counsel may communicate directly with potential class members before certification, and that communication can include offers of settlement. *Id.* at 4–5 (citing, among other cases, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 925 (N.D. Ill. 2013); *Robinson v. Chefs' Warehouse, Inc.*, 2019 WL 3220288, at *4 (N.D. Cal. July 17, 2019)). Next, Vivid Seats points out that to restrict such communications pursuant to Rule 23(d), the movant must show the particular abuses by which it is threatened. *Id.* at 5 (citing *Reid*, 964 F. Supp. 2d at 926). Donets, submits Vivid Seats, has not carried his burden, as he fails to show that Vivid Seats engaged in coercive, misleading, or other abusive communications with the putative class. *Id.* In fact, argues Vivid Seats, the contrary is the case as the Communications were factually accurate. *Id.* at 6. In support of its opposition, Vivid Seats submits the declaration of

Alexandra S. Davidson, one of Vivid Seats' attorneys. The Court, reasons Vivid Seats, should deny the motion, as the court did in *Reid*.

In *Reid*, the plaintiffs brought a putative class action against a manufacturer of a hair treatment product for several claims, including breach of express and implied warranties, alleging that the product caused consumers to suffer hair loss and damage. 964 F. Supp. 2d at 900. The plaintiffs moved for corrective action under Rule 23(d), arguing that the defendant's pre-certification communications with putative class members were coercive and misleading because they fail[ed] to provide information about the class action, fail[ed] to identify class counsel, fail[ed] to provide any detail regarding the claims alleged, fail[ed] to explain class procedures, and fail[ed] to explain the consequences of a pre-certification settlement." *Id.* at 924–26. The district court disagreed. The court found no evidence that the letters were coercive, noting that the defendant's letters "did not use intimidation, force, or threats when communicating with putative class members," nor did they otherwise reflect "abusive litigation tactics," noting that the letters spelled out the existence of the suit, including "the case name, the court in which it is pending, and the case number." *Id.* at 928–29. Turning to defendant's other purported omissions, "such as [defendant's] purported failure to identify class counsel or explain class action procedures," the court observed that those "are not the types of failures that courts have found constitute abusive litigation tactics and therefore lack merit." *Id.* The court thus denied the plaintiffs' requests for corrective action. *Id.* at 930–31.

Although the Court agrees with Vivid Seats that there are similarities between the communications in *Reid*, and the Communications sent to putative class members in this case, there are several important distinctions. First, in *Reid*, it was the potential class members who initiated the communications with the defendant, "with a call or an email." *Reid*, 964 F. Supp. 2d at 927, 930. Here, Vivid Seats reached out, unsolicited to the prospective class members. As the court observed in *Reid*, the fact that the potential class member consumers initiated any contact negated a finding that defendant "improperly sought to eliminate potential class members' rights in this action." *Id.* at 930. Second, and more importantly, the Court agrees with Donets that the communications in *Reid* differ from those at issue here, because *Reid* did not "involve the nondisclosure of liquidated statutory damages." Reply at 6. The settlement offers made to putative class members in *Reid* involved refunds for the purchased products. *Reid*, 964 F. Supp. 2d at 928. Third, and finally, as Donets points out in reply, the court in *Reid* focused on whether the communications were coercive or were potentially coercive, including noting that no "ongoing business relationship" was present, rather than on whether they were misleading by omission as Donets claims about the Communications here. Reply at 7 (citing *Reid*, 964 F. Supp. 2d at 926–29; *Friedman v. Intervet, Inc.*, 730 F. Supp. 2d 758, 764 n.6 (N.D. Ohio 2010) (an ongoing business relationship, particularly employer-employee, is often relevant to determine whether a defendant's communications are *coercive*, but not where the analysis addresses whether the communication was misleading)). As Donets correctly states, courts need not find that communications are coercive to warrant corrective

action under Rule 23(d); communications that omit critical information can also be improper.

Donets, as the movant, does not cite any authority directly on point that a defendant's pre-certification communications to potential class members that omits information about statutory damages are misleading for Rule 23(d) purposes. However, the Court finds *Cnty. of Santa Clara*, cited by Donets, instructive. In *Cnty. of Santa Clara*, the plaintiffs, two California counties, brought a class action lawsuit alleging that the defendant pharmaceutical companies overcharged them for certain drugs. 2010 WL 2724512, at *1. The defendant pharmaceutical company sent refund checks to its customers, including putative class members. *Id.* at *2. The letter accompanying the checks explained that the checks were a refund for overcharged drugs and that acceptance of the refund constituted accord and satisfaction, and release of future claims. *Id.* *1. The letter did not include a copy of the complaint, contact information for plaintiffs' counsel, or information about the status of the case. *Id.* at *4. The plaintiffs sought relief under Rule 23(d), arguing that the letters were misleading. *Id.* The district court agreed. *Id.* at *6. The court noted that, while the letters did not contain any misstatements, they were inadequate to inform the putative class, as, "[n]ot only did the letter omit a summary of the complaint, it did not provide an explanation of the claims of the plaintiffs, the plaintiffs' counsel's contact information or the status of the case." *Id.* at *4. The court rejected defendants' contention that the "letter included all that was required, including the name of the case and explanation that it was a putative class action." *Id.* Of note here, the court found that, "at a minimum [the defendants] should have explained the specific claims that plaintiffs allege against [the defendants], precisely how the new components were calculated, and how closely the new calculations aligned with plaintiffs' allegations." *Id.* It found that, importantly, the letter was "unclear and misleading" about the methodology for determining payments, and rejected defendants' argument that "a disagreement in payment methodology is allowable when offering a settlement," reasoning that "the putative plaintiff class must still have been fully informed to be able to decide whether to accept the settlement offer." *Id.* In the same vein, the court also acknowledged that while there is no strict requirement to include a copy of the complaint, "the putative class must have been given the necessary information to choose whether to accept the settlement checks." *Id.*

While not completely analogous, the Court finds *Cnty. of Santa Clara* persuasive. As that court noted, a defendant whose communications with prospective class members omit relevant information cannot take refuge behind the assertion that its communication did not contain any misstatements. 2010 WL 2724512, at *4. Rule 23(d) cannot be read so narrowly. Rather, the object of the rule is to ensure that prospective class members have sufficient information to make an informed decision on whether to execute a release and relinquish any claims. *Id.* Vivid Seats retorts that *Santa Clara* is not binding, as it is an out-of-circuit unreported case. Resp. at 9. True, but the Court finds its reasoning persuasive. Just as the court in *Cnty. of Santa*

8

*Clara* found the defendants' failure to include information about the theories of calculating the refunds to be misleading, the Court agrees with Donets that the Communications' statement that, the "lump sum of $100 . . . may be more or less than what you may ultimately recover in the Lawsuit," insufficient on its own to provide the potential class members the necessary information to choose whether to accept the settlement. Mot. R. 23(d) Relief at 5 (citing Cover Sheet). This is all the more the case when coupled with the fact that Vivid Seats failed to include a copy of the Complaint or even a link to the Complaint in its Communications with prospective class members. As Donets points out, nothing in the Communications informs the potential class members that BIPA provides for statutory damages in the amount of $1,000 or $5,000 (10 or 50 times the amount offered). *Id.*; *see also* Reply at 14. Because Vivid Seats did not include a copy of the Complaint with the Communications, information about BIPA statutory damages was nowhere in the Communications themselves. Curiously, without citation to any authority, Vivid Seats would place the burden on prospective class members to "Google BIPA to learn about the statutory damages available." Resp. at 4 n.4. Vivid Seats' argument would have more force, except for the fact that once it decided to communicate with prospective class members, it took on the responsibility to provide the would-be class members enough information to make an informed decision about whether to release their claims. The Court agrees with Donets, and the court in *Cnty. Of Santa Clara*, that an omission in communications to class members is not rectified by the class members' ability to Google the information. Reply at 6; *Cnty. of Santa Clara*, 2010 WL 2724512, at *5.

As noted above, Donets also argues that Vivid Seats' failure to disclose the pendency of the appeals in *Tims*, *Marion*, and *White Castle* is an omission requiring correction under Rule 23(d). That's a bridge too far. The Court is not convinced that, on its own, the Communications' omission of the pending appeals would warrant corrective notice. However, when determining whether a communication is abusive, the Court must examine the facts in totality. *Jubinville*, 2019 WL 1584679, at *8. Not providing information about the current legal landscape of Donets' claims contributes to the misleading nature of the Communications. *C.f. Cnty. of Santa Clara*, 2010 WL 2724512, at *4 (failure to include information about the "status of the case" was misleading). Examining the Communications as a whole, the Court finds that Donets has met his burden in demonstrating that the Communications were misleading by omission, in that they do not include: (1) information about the available statutory damages under BIPA, (2) information about the *Tims*, *Marion*, and *White Castle* appeals, (3) Donets' counsel's information, or (4) a copy of, or link to, the complaint. This is not to suggest that in every class action case involving statutory damages, the communications to the putative class must disclose available statutory damages. Or for that matter, even the status of pending appeals that could affect the litigation. But, given the facts of this case, the omission of the above information failed to

provide the putative class sufficient information with which to make an informed decision.

The Court having found that Vivid Seats' communication to its former employees was misleading, now turns to the appropriate sanction. Donets maintains that the Court should invalidate the Limited Release and Consent Forms and require corrective notice to be sent. Mot. R. 23(d) Relief at 13–14 (citing *Piekarski*, 4 F. Supp. 3d at 954–57); Reply at 13–14. In *Piekarski*, an FLSA action, the defendants, after having obtained a stay of the litigation, sent an email to all employees announcing a company-wide arbitration program. *Piekarski*, 4 F. Supp. 3d at 954. The plaintiffs moved to invalidate the arbitration agreement and sought the issuance of corrective notice, arguing that defendant's implementation of the arbitration program was improper, abusive, and misleading because it was done after the collective action was filed and after defendants obtained a stay of the litigation. *Id.* at 954. The court agreed, finding that the arbitration agreement "was likely to confuse and mislead potential class members and prevent them from participating" in the case. *Id.* at 955. Consequently, the court invalidated the dispute resolution agreement and entered a corrective order under Rule 23(d).

The Court finds Piekarski instructive. In *Piekarski*, as in this case, the court, after finding the communications—which were sent while a stay was in place[3]—to be misleading, entered a corrective order invalidating the arbitration agreement; directing the defendants to provide the plaintiff the name and addresses of all class members who were sent the arbitration agreement; directing the defendants to provide the plaintiff with any opt-out forms they had received; and authorizing the plaintiff to issue a court-approved corrective notice at the defendant's expense. 4 F. Supp. 3d at 956–57. The court in *Cnty. of Santa Clara* similarly invalidated the releases signed by potential class members, but found that no corrective communication was necessary. 2010 WL 2724512, at *6. It ordered that any checks cashed would be deducted from any recovery obtained in the case by the recipients.

[3] Not surprisingly, nowhere in its Response does Vivid Seats address Donets' complaints that it was improper to issue the Communications while the case was stayed. Like the court in *Piekarski*, the Court finds that Vivid Seats' actions, in sending the Communications to putative class members—administratively through its counsel—were "highly improper in light of this Court's Order[] issuing . . . the stay entered in this case, which [Vivid Seats] requested." *Piekarski*, 4 F. Supp. 3d at 956. Although the fact that Vivid Seats sent the Communications during the pendency of the stay would not on its own warrant corrective action under Rule 23(d), the Court could use its own inherent authority to sanction Vivid Seats for its misconduct. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). "[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct."). However, because the Court agrees with Donets that corrective action *is* appropriate under Rule 23(d), and Donets does not request that the Court otherwise sanction Vivid Seats for its violation of the stay, the Court does not impose additional sanctions.

*Id.* Also, in *Slavkov*, the court invalidated any settlement releases and ordered the parties to submit competing proposals for a curative notice to be sent to the recipients of the defendants' communications, informing the recipients that the releases are invalid, and summarize the court's reasoning, as described above, for invalidating them. 2015 WL 6674575, at *7. The court declined to enjoin the defendants from further communication with putative class members, as it did not find that the plaintiffs showed a serious risk that the defendants would mislead the potential class members again in future communications. *Id.*

The Court finds that Vivid Seats' "misleading actions clearly frustrate the purpose of Rule 23." *Cheverez*, 2016 WL 861107, at *6. Therefore, it invalidates the Limited Releases and Consent Forms obtained by Vivid Seats.[4] "In contrast to the likely harm which the putative class will suffer if the releases are allowed to stand, [Vivid Seats is]not seriously disadvantaged by their invalidation." *Id.* (citing *Gulf Oil*, 452 U.S. at 101–02). Like the court in *Cheverez*, the Court leaves open the possibility that Vivid Seats' total damages amount will be credited for payments they have already made pursuant to the claims process. *Id.* (internal citation omitted). The Court also orders Vivid Seats to provide Donets' counsel the names, addresses, and email addresses of any potential class members who were sent the Cover Sheets, Limited Releases, and Consent Forms, and to provide Donets' counsel with any signed copies of the Limited Release and Consent Forms. By June 6, 2022, Donets shall submit a proposed curative notice to the Court (on the docket and via email to the Court's proposed order inbox), which advises putative class members of (1) the current status of this case, (2) the damages available under BIPA, (3) the issues raised and the current status of *White Castle*, *Tims*, *Marion*, and *McDonald*, (4) that putative class members may contact Donets' counsel for more information or retain their own counsel. Vivid Seats may submit objections to the proposed notice, if any, by June 13, 2022. The Court will review the proposed notice and any objections, and will approve a version to be issued, at Vivid Seats' expense, to all potential class members to whom Vivid Seats sent the Communications (which were not returned as undeliverable).

It should go without saying that Vivid Seats and its counsel are barred from contacting Donets again during the pendency of this case (there is no evidence before the Court that such previous contact was intentional; however, it was still improper).[5]

---

[4]While not argued by the parties, the Court notes that several courts have questioned whether a court has authority to void signed releases where the putative class members did not request that they be voided. *See Griffin v. Aldi, Inc.*, 2017 WL 1957021, at *7 (N.D.N.Y. May 11, 2017) (citing *Tolmasoff*, 2016 WL 3548219, at *15). The Court need not decide the issue because it was not raised by either party.

[5]The American Bar Association Model Rule of Professional Conduct 4.2 prohibits attorneys from communicating with a represented party. As noted above, the Communications were

Th Court also admonishes Vivid Seats that it is prohibited from contacting any potential class members while this case is stayed. Donets does not request, nor will this Court order, that Vivid Seats be prohibited from contacting putative class members altogether *once the stay is lifted*, so long as it does so in a way that is not misleading.


Date: 5/16/2022

United States District Judge
Franklin U. Valderrama

---

sent by Vivid Seats' counsel in mailing envelopes with counsel's label. Wooten Decl. ¶ 9; Donets Decl. ¶ 4; Donets Decl. Exh. B. Vivid Seats' counsel protests that "Vivid Seats and only Vivid Seats made the settlement offers" and "[d]ue to Vivid Seats's lack of resources, it delegated the 'mailing' function of these offers to defense counsel." Resp. at 4 (citing Davidson Decl. ¶¶ 9–10). According to Davidson, "an administrative assistant . . . inadvertently mailed [Donets] the same settlement offer as everyone else." *Id.* (citing Davidson Decl. ¶ 11). As noted above, the Court does not find, based on the evidence before it, that Vivid Seats' counsel intentionally contacted Donets. However, the Court admonishes counsel not only to adhere to Court orders such as the stay, but also to refrain from contacting Donets—even inadvertently—in the future.