UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SAMUEL DONETS,** individually and on behalf of all others similarly situated, | Case No. 1:20-cv-03551 |
| Plaintiff, | |
| vs. | Hon. Lindsay C. Jenkins |
| **VIVID SEATS LLC,** | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
RULE 12(B)(6) MOTION TO DISMISS AND MOTION TO STRIKE**

Wallace C. Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
(847) 368-1500
wsolberg@andersonwanca.com

Nick Wooten
Head of Consumer Litigation
DC LAW, PLLC
1012 W. Anderson Ln.
Austin, TX 78757
(512) 220-1800
nick@texasjustice.com

Rusty A. Payton (Illinois Bar No. 6201771)
PAYTON LEGAL GROUP
20 North Clark Street, Suite 3300
Chicago, IL 60602
(773) 682-5210
info@payton.legal

Arthur C. Czaja (Illinois Bar No. 6291494)
LAW OFFICE OF ARTHUR CZAJA
7521 N. Milwaukee Avenue
Niles, IL 60714
(847) 647-2106
arthur@czajalawoffices.com

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
RULE 12(b)(6) MOTION TO DISMISS AND MOTION TO STRIKE**

Plaintiff, Samuel Donets, submits this memorandum of law in opposition to Defendant Vivid Seats, LLC's ("Defendant" or "Vivid") Rule 12(b)(6) motion to dismiss and motion to strike.

## Introduction

This class action is brought by Plaintiff, a former employee of Vivid, for alleged violations of the Illinois Biometric Information Privacy Act ("BIPA" or "Act"), 740 ILCS § 14/1, *et seq*. In Count I of his First Amended Complaint ("FAC") (Doc. 24), Plaintiff asserts claims under Section 15(b) of the Act. These claims are based on Vivid's collection of Plaintiff's (and the putative Class's) (hereafter, "Class") biometric identifiers and biometric information, *i.e.*, their fingerprints (and related templates) (collectively, "biometric identifiers" or "fingerprints"), for time tracking and employee authentication, without first obtaining the required written consent. (FAC ¶¶ 11, 49). In Count II, Plaintiff asserts claims under Section 15(d) of the Act based on Vivid's disclosing, redisclosing, or otherwise disseminating Plaintiff's (and the Class's) biometric identifiers to a third party (Vivid's "payroll company"), without consent. (*Id*. at ¶¶ 49, 57-59). Pursuant to 740 ILCS § 15/20, Plaintiff's prayer for relief in both Counts seeks declaratory and injunctive relief, statutory damages of $5,000 for each willful and/or reckless violation of BIPA and $1,000 for each negligent violation of BIPA, reasonable attorneys' fees and costs, and other expenses. (*Id*. ¶¶ 52, 61).

Vivid moves to dismiss Count II of Plaintiff's FAC under Rule 12(b)(6), and moves to dismiss or strike (also pursuant to Rule 12(b)(6)) a portion of Plaintiff's prayer for relief. (Doc. 70, hereafter, "Mem."). Vivid's motion does not challenge Plaintiff's Count I claim under Section 15(b). Instead, Vivid focuses on Plaintiff's Count II claim under Section 15(d), arguing that Plaintiff has failed to allege sufficient facts to state a claim that Vivid disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class's biometric identifiers without consent. (Mem. at

3-5). Vivid further argues that the Court should dismiss or strike Plaintiff's prayer for enhanced statutory relief of $5,000 per violation in the event such violations are shown to be willful or reckless because Plaintiff has failed to allege sufficient facts showing willful or reckless conduct. (*Id.*) Vivid's arguments are factually and legally unsustainable.

As to Section 15(d), Plaintiff has sufficiently alleged facts that make it "plausible" (and as it turns out, indisputable) that Vivid disseminated Plaintiff's (and the Class's) biometric identifiers to a third-party for time tracking and employee authentication. Each time a Vivid employee began or ended a workday, and each time they left or returned from lunch or a break, Vivid required a scan of the employee's fingerprints, including Plaintiff's. (FAC ¶¶ 29). Plaintiff further alleged that Vivid "systematically and automatically collected, used stored, and disclosed biometric identifiers and/or biometric information of Plaintiff and the Class . . .," FAC ¶ 49, and on information and belief, used a "biometric time clock" to do so, disclosing said information "to at least the payroll company hired by Defendant . . .," *id*. at ¶ 59). These allegations are taken as true on a Rule 12(b)(6) motion. Thus, Plaintiff is entitled in the instant Rule 12(b)(6) motion to the reasonable inference that after collecting his fingerprints at least four times a day to "track" and "authenticate" him, *see* FAC ¶¶ 11, 27, 29, Vivid forwarded said fingerprints to a third-party "payroll company."

More importantly, Vivid's "dissemination" argument can be summarily disposed of because Vivid ***has already admitted*** in a public filing made in this case (and thus subject to judicial notice) that ***it did*** in fact disclose biometric identifiers of Plaintiff and the Class to "its vendors, and/or the licensor of the Company's [Vivid's] time and attendance software" as part of its "computer-based timekeeping system." (*See* Doc. 45-1, Declaration of Alexandra S. Davidson, attached as **Exhibit 1**, at ¶ 4; *id*. at Exhibit C). In other words, while Vivid has admitted that it

disseminated Plaintiff's and the proposed Class's biometric identifiers to its third-party vendor(s) and software licensor(s), it nonetheless argues to this Court that Count II should be dismissed because there are insufficient allegations of dissemination. Vivid's argument is untenable.

Vivid's attack on Plaintiff's prayer for relief for enhanced statutory damages of $5,000 for each willful and reckless violation meets a similar fate. First, as a factual matter, Vivid was violating BIPA through its collection and dissemination of Plaintiff's and the Class's biometric identifiers for, at the very least, seven years after BIPA was enacted in 2008. On that basis alone, courts have held willful and reckless conduct has been sufficiently alleged at the pleadings stage. Second, as a legal matter, Plaintiff's request for enhanced statutory damages for reckless or intentional conduct (Vivid makes no argument regarding negligent conduct) is not a claim but is instead a prayer for relief. As such, there is no requirement to plead facts suggesting recklessness or intentional conduct, as numerous courts have held. *See e.g., Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 874-75 n.7 (N.D. Ill. 2022). In short, Vivid's Rule 12(b)(6) motion to dismiss/strike a portion of Plaintiff's prayer for relief fails as a matter of law.

### **Relevant Allegations in First Amended Complaint**

Plaintiff worked for Vivid in 2014-2015 at Vivid's Illinois call center. (Doc. 24, FAC ¶ 26). Since at least 2015, Vivid required employees to scan their fingerprints at the start and conclusion of each day and each time they left and returned from lunch or break. (*Id.* ¶¶ 27, 29). Plaintiff's fingerprints were scanned no less than four times each workday and hundreds of times over the course of his employment. (*Id.* ¶ 29). The scanning of Plaintiff's and the Class's fingerprints was a condition of employment to allow Vivid to time track and authenticate their employees. (*Id.* ¶ 11).

In Count I, brought pursuant to Section 15(b) of the Act, Plaintiff alleges that he and the

proposed Class had their "biometric identifiers" (*i.e.*, their fingerprints) collected by Vivid, which were used to identify Plaintiff and the Class (making the biometric identifiers biometric information under BIPA). (*Id.* ¶¶ 47, 48). Plaintiff alleges that Vivid "systematically and automatically collected, used, stored, and disclosed biometric identifiers and/or biometric information of Plaintiff and the Class without first obtaining the written release required by 740 ILCS ¶ 14/15(b)(3)." (*Id.* ¶ 49). Plaintiff alleges that Vivid "did not inform Plaintiff and the Class in writing of the specific length of term for which biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS § 14/15(b)(1)-(2)." (*Id.* ¶ 50). Pursuant to Section 15/20 of the Act, Plaintiff's Count I prayer for relief seeks declaratory and injunctive relief, statutory damages of $5,000 for each willful and/or reckless violation of BIPA and $1,000 for each negligent violation of BIPA, and reasonable attorneys' fees and costs and other litigation expenses. (*Id.* ¶ 52).

In Count II, brought pursuant to Section 15(d) of the Act, Plaintiff alleges that he and the proposed Class had their "biometric identifiers" (in the form of fingerprints) collected by Vivid, which were used to identify Plaintiff and the Class. (*Id.* ¶¶ 57, 58). Plaintiff further alleges:

> Upon information and belief, by utilizing a biometric time clock, Defendant systematically and automatically disclosed, redisclosed or otherwise disseminated biometric identifiers and/or biometric information of Plaintiff and the Class ***to at least the payroll company hired by the Defendant*** without first obtaining the consent required by 740 ILCS § 14/15(d)(1).

(*Id.* ¶ 59) (emphasis added). Pursuant to Section 15/20 of the Act, Plaintiff's Count II prayer for relief Count II also seeks declaratory and injunctive relief, statutory damages of $5,000 for each willful and/or reckless violation of BIPA and $1,000 for each negligent violation of BIPA, and reasonable attorneys' fees and costs and other litigation expenses. (*Id.* ¶61).

### **Vivid's Admission that it Disseminated Biometric Identifiers to Third Parties**

Plaintiff's original Complaint was filed on June 17, 2020, and his FAC was filed on

4

October 16, 2020. (Docs. 1, 24). On June 9, 2021, during the pendency of a stay that Vivid had successfully requested, Vivid mailed "settlement offers" to 333 former employees (including Plaintiff) in the form of a Limited Release of Claims Agreements ("Limited Release") and Notice of Retention Policy and Consent Form ("Consent Form"), along with a Cover Sheet. (Davidson Decl. ¶ 4; *id*. at Exhibits A, B, C). This settlement offer was the subject of Plaintiff's successful Rule 23(d) motion. (*See* Doc. 48). Most pertinent here, the Consent Form provides as follows:

> By signing below, I acknowledge that I have been advised and understand that Vivid Seats LLC (the "Company"), its vendors, and/or the licensor of the Company's time and attendance software used a timekeeping system that may have captured "biometric information" and/or a "biometric identifier" as those terms are defined in the Illinois Biometric Information Privacy Act, 740 ILCS §§ 14/1, *et seq*. for the purpose of identifying employees and recording time entries while utilizing the Company's timekeeping system. I understand that the time clock that was used was a computer-based system that may have scanned an employee's finger for purposes of identification and further understand that the computer system may have extracted unique data points and created a unique mathematical representation or "template" of the finger image used to verify the employee's identity when the employee arrived at or departed from the work place.
>
> The Company ceased using the time clock in May 2016, and the Company has not retained, and does not possess, any employee templates or associated data.
>
> I hereby acknowledge that I have received this notice of the Company's retention policy, and that I voluntarily consent to the Company's, its vendors', and/or the licensor of the Company's time and attendance software's prior use of the timekeeping system, including to the extent that it utilized the employee's finger scan(s) and related templates, and hereby acknowledge my voluntary consent to the Company having provided such templates and associated data to its vendors, and/or the licensor of the Company's time and attendance software.

(Davidson Decl. ¶ 4; *id*. at Ex. C).

In its Order granting Plaintiff's Rule 23(d) motion, the Court quoted from the Consent Form in part as follows: "[b]y signing below, I acknowledge that I have been advised and understand that Vivid Seats LLC (the "Company") . . . used a timekeeping system that may have captured 'biometric information' and/or a 'biometric identifier' as those terms are used in [BIPA];" and that "I hereby acknowledge that I have received this notice of the Company's retention policy,

5

and that I voluntarily consent to the Company's . . . prior use of the timekeeping system . . . and hereby acknowledge my voluntary consent to the Company having provided such templates and associated data to its vendors . . . ." (Doc. 48 at 3, 4) (citing Davidson Decl. at Ex. C).

## **Standard of Review**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint need only plausibly suggest the possibility of a right to relief above the "speculative level." *Twombly*, 550 U.S. at 555. A plaintiff does not need "detailed factual allegations," but must plead more than "labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Cothron v. White Castle Sys.*, 467 F. Supp. 3d 604, 613 (N.D. Ill. 2020) (citing *Twombly*, 550 U.S. at 555).

In considering a Rule 12(b)(6) motion to dismiss, the Court considers the complaint itself, as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *In re Cordova*, 635 B.R. 321, 334 (N.D. Ill. 2021) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019-20 (7th

Cir. 2103) (on Rule 12(b)(6) motion to dismiss, "facts evident from documents attached to complaint are considered, as is information that can be judicially noticed"). The Court can "consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment." *Thompson v. City of Chicago Board of Educ.*, 2016 WL 362375, at *2 (N.D. Ill. Jan. 29, 2016) (citing *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)).

In addition, "there is no question that a court may take judicial notice of its own docket." *In re Cordova*, 635 B.R. at 334; *see also Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (courts "permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"). Fed. R. Evid. 201(2) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot be reasonable questioned." Fed R. Evid. 201(c)(1) provides that the court "may take judicial notice on its own." Fed R. Evid. 201(c)(2) provides that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Finally, the court may take judicial notice at any stage of the proceeding. Fed. R. Evid. 201(d); *see also Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (district court may take judicial notice of adjudicative facts at any stage of the litigation, including a Rule 12(b)(6) motion to dismiss).

## Argument

**I.  Vivid's attack on Count II ignores the allegations of the FAC as well as its admission that it disseminated biometric identifiers of Plaintiff and the Class.**

Vivid argues that Plaintiff's Count II claim for violation of Section 15(d) of the Act should be dismissed because Plaintiff purportedly has not "sufficiently pled" dissemination of Plaintiff's and the Class's biometric identifiers. (Mem. at 3). Vivid claims the entirety of Plaintiff's Section

7

15(d) claim rests solely on ¶ 59 of the FAC (*see supra* at 5 for text of ¶ 59). Vivid argues that Plaintiff (i) offers "no basis" for the allegations in ¶ 59 made on "information and belief," (ii) has not presented any "legitimate reason to suspect that Defendant has disclosed his biometric data or that of any putative class members," and (iii) the information Plaintiff purports to allege on information and belief is "not in Vivid Seats's possession alone." (Mem. at 4, 5). Vivid's arguments are unsustainable.

First, Plaintiff's Section 15(d) claim is based on more than ¶ 59. Plaintiff alleges in the FAC that employees of Vivid, including Plaintiff and putative Class members, were required as a condition of employment to have their fingerprints scanned and stored in a system maintained by Vivid for time tracking and employee authentication. (FAC ¶ 11). Plaintiff alleges that each time a Vivid employee began or ended a workday, and each time they left or returned from lunch or a break, Vivid required a scan of the employees' fingerprints, including Plaintiff's. (*Id.* ¶ 29). Plaintiff alleges that his fingerprints were scanned by Vivid no less than four times a day and hundreds of times over the course of his employment by Vivid. (*Id.* ¶ 29). Plaintiff alleges (and not on information and belief) that Vivid "systematically and automatically collected, used, stored, and ***disclosed*** biometric identifiers and/or biometric information of Plaintiff and the Class . . ." (*Id.* ¶ 49) (emphasis added). Finally, Plaintiff alleges on "information and belief" that "by utilizing a biometric time clock, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers and biometric information of Plaintiff and the Class to ***at least the payroll company hired by Defendant*** . . .," *id.* at ¶ 59) (emphasis added).

These allegations are taken as true on a Rule 12(b)(6) motion, and they dispose of Vivid's attempt to pigeonhole Plaintiff's Count II claim to ¶ 59 alone. Putting to one side Vivid's admission that it did disseminate Plaintiff's and the Class's fingerprints to its third-party vendor(s) and

licensor(s), *see supra* at 5, *see infra* at 10, Vivid's assertion that Plaintiff has not presented any "legitimate reason to suspect that Defendant has disclosed his biometric data or that of any putative class members," Mem. at 4, turns Rule 12(b)(6) on its head—it ignores the truth of allegations of the FAC, and ignores the reasonable inferences to be drawn from those allegations, including the inference that Vivid forwarded the results of its serial fingerprinting to "at least the payroll company hired by [Vivid]." (FAC ¶ 59).

Vivid's suggestion that the identity of the "third-party payroll company" is information that is "not in Vivid Seats's possession alone," and therefore, ¶ 59 is impermissible "information and belief" pleading, *see* Mem. at 5 n.2, is a classic Catch-22, and it is false. Reduced to its essence, Vivid's argument is that even though Vivid has not disclosed the identities of its vendor(s) and software licensor(s) to whom Plaintiff's and the Class's fingerprints were disseminated (making said information "peculiarly within Vivid's possession and control"), and because Plaintiff has not alleged the identity of these third parties in the FAC (because Plaintiff does not know who they are), Plaintiff's Count II claim should be dismissed for non-specificity. That argument is unsustainable on its face.

Again, because only Vivid knows the identities of its third-party vendors and software licensor(s), *i.e.*, the information is "peculiarly within Vivid's knowledge and control," pleading on information and belief as to these unknown entities to whom Vivid sent Plaintiff's and the Class's fingerprints is entirely proper. *See Melzer v. Johnson & Johnson, Inc.*, 2023 WL 3098633, at *5 (D. N.J. Apr. 26, 2023) (in BIPA case, the court stated that "what JJCI [defendant] does or does not do with the biometric identifiers is exactly the type of information 'peculiarly within' JJCI's knowledge or control," and that "numerous courts have found that allegations concerning defendant's . . . biometric data sharing to affiliates and third party providers can create plausible

9

inference of dissemination or disclosure"). Even Vivid recognizes as much. (*See* Mem. at 5 n.2) ("information and belief" allegations "might be permissible 'where the facts are peculiarly within the possession and control of the defendant'") (case citation omitted). This is that case.

Finally, and dispositive of Vivid's "information and belief" arguments, Vivid has unequivocally ***admitted*** in the publicly filed Consent Form (*see supra* at 5, 6) that it, along with its "vendors, and/or the licensor of the Company's time and attendance software used a timekeeping system that may have captured 'biometric information' and/or a 'biometric identifier' . . . for the purpose of identifying employees and recording time entries while utilizing the Company's timekeeping system." (Davidson Decl. at Ex. C). The Consent Form further provided "the time clock that was used was a computer-based system that may have scanned an employee's finger for purposes of identification," "that the computer system may have extracted unique data points and created a unique mathematical representation or 'template' of the finger image used to verify the employee's identity when the employee arrived at or departed from the work place," and that Vivid ***"provided such templates and associated data to its vendors, and/or the licensor of [Vivid's] time and attendance software***." (*Id*.) (emphasis added). Indeed, as stated, the Court's Order granting Plaintiff's Rule 23(d) motion quoted from the Consent Form the admission by Vivid that it "provided such templates and associated data to its vendors . . ." (Doc. 48 at 3, 4) (citing Davidson Decl. at Ex. C).

Plaintiff respectfully requests based on the authorities set forth *supra* at 7-8, that the Court take judicial notice of the Consent Form and Judge Valderrama's discussion of same in his Rule 23(d) Order, both of which are on the Court's own docket in this case. The Consent Form was previously submitted and authenticated in this case by Vivid's Counsel, *see* Davidson Decl. ¶ 4, *id*. at Ex. C, and was expressly relied upon by Judge Valderamma in his Rule 23(d) Order. (Doc.

10

48 at 3, 4) (citing Davidson Decl. at Ex. C).

Finally, Vivid's admissions in the Consent Form render inapposite its reliance on *Horn v. Method Prods.*, *PBC*, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022), *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *4 (N.D. Ill. July 27, 2021), *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020), *Kloss v. Acuant, Inc.,* 462 F. Supp. 3d 873, 877 (N.D. Ill. 2020), and *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019). (*See* Mem. at 4, 5). None of those cases present the scenario wherein a defendant previously admitted in the same case that it disseminated biometric identifiers, and then subsequently moved to dismiss, arguing there were insufficient allegations as to dissemination of those same biometric identifiers.

**II.    Vivid's motion to dismiss/strike Plaintiff's prayer for relief of $5,000 for reckless or intentional violations of Sections 15(b) and 15(d) fails both legally and factually.**

Vivid argues that a portion of Plaintiff's prayer for relief—$5,000 per violation if willful or reckless behavior is shown, *see* FAC ¶¶ 52, 61, and Prayer for Relief—should be dismissed or stricken under Rule 12(b)(6) because Plaintiff has failed allege facts sufficient to support a finding of intentional or reckless conduct. (Mem. at 5-7). Specifically, Defendant argues that "[a]t bottom, Donets only alleges that the statute has existed since 2008, and that Vivid Seats failed to comply with the statute." (Mem. at 7) (citing FAC ¶¶ 15, 43-61). Vivid's argument is lacking both legally and factually.

Section 20 of BIPA sets out the recovery available for someone aggrieved by a violation of the Act: (1) "liquidated damages of $1,000 or actual damages, whichever is greater," for negligent violations; (2) "liquidated damages of $5,000 or actual damages, whichever is greater," for reckless or intentional violations; (3) "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses;" and (4) "other relief, including an injunction, as the State or federal court may deem appropriate." 740 ILCS § 14/20.  In *Cothron*, 467 F. Supp. 3d at

11

614-15, the court was faced with the same argument raised by Vivid here—that plaintiff failed to plead that defendant (White Castle) acted with the mental state required for reckless or intentional violation of the Act, *i.e.*, $5,000 per violation. The court rejected the argument, stating that the plaintiff requested (like the Plaintiff here) not only statutory damages but also declaratory and injunctive relief, and that "[f]or each violation, these requests for relief stem from the same ***claim***." *Id.* at 615 (emphasis in original). The court then held:

> A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts. One claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (internal citations omitted). "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F3d 317, 325 (7th Cir. 2015). Here, if the complaint plausibly pleads violations of Section 15(b) and Section 15(d)—which the Court finds that it does—then, even absent specific allegations about White Castle's mental state with respect to each of those claims, it has stated a claim entitling Ms. Cothron to litigation expenses and injunctive relief under Section 20, whether or not she proves entitlement based on negligent, reckless, or intentional conduct. 740 ILCS § 14/20(3)-(4). In short, allegations of scienter or no, Ms. Cothron's complaint states a plausible claim for relief under sections 15(b) and 15(d); Rule 12(b)(6) ***does not require her to plead the facts that will determine the amount of actual damages she may be entitled to recover***.

*Cothron*, 467 F. Supp. 3d at 615 (emphasis added).

Vivid's attack on enhanced statutory damages relies substantially on *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618-19 (N.D. Ill. 2019), but that reliance is misplaced. (*See* Mem. at 5, 6). In *Rogers*, the court found plaintiff's allegations that defendant's violations of BIPA were "knowing and willful" were insufficient as a matter of law and dismissed plaintiff's "claim of intentional and reckless conduct," albeit without prejudice and with leave to amend. 409 F. Supp. 3d at 619. But the Judge that issued the *Rogers* decision reversed his "knowing and willful" analysis in a later BIPA case—*Sosa*, 600 F. Supp. 3d at 874-75.

In *Sosa*, 600 F. Supp. 3d at 874, the court held that "[w]hether a litigant has a 'cause of

12

action' is analytically distinct and prior to the question of what relief, if any a litigant may be entitled to receive." (citing *Davis v. Passman*, 442 U.S. 228, 239 (1979)). The *Sosa* court stated the plaintiff "need not plead facts (such as facts plausibly suggesting negligence, recklessness or intentional conduct) that show his entitlement to these precise forms of relief." *Id.* (citing *Ibarra v. Prospera, LLC*, 2021 WL 1921015, at *4 (N.D. Ill. May 12, 2021) ("Rule 8(a)(3) requires plaintiffs to 'include a demand for relief sought' but does not require damages to be alleged plausibly or with particularity"); *Cothron*, 467 F. Supp. 3d at 615 ("Rule 12(b)(6) does not require [the plaintiff] to plead facts that will determine the amount of actual damages she may be entitled to recover [under sections 15(b) and 15(d) of BIPA"); *Peaty v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020) ("Rule 8 does not require a plaintiff to plead damages with particularity and instead only requires 'a demand for the relief sought'"). The *Sosa* court acknowledged its "contrary conclusion" in *Rogers*, stating there were several decisions it did not consider in *Rogers* (many of which were issued after *Rogers*) that "have convinced us that our conclusion today is the correct one." *Id.* at 875 n.7; *see also Wilk v. Brainshark, Inc.*, 2022 WL 4482842, at *6 (N.D. Ill. Sept. 27, 2022) (in BIPA case, stating that "Courts repeatedly hold that a plaintiff need not show his entitlement to the 'precise forms of relief' that he seeks at the pleadings stage") (citing *Sosa* and *Cothron*, *see supra*, and rejecting defendant's reliance on *Rogers*—"the court that issued *Rogers* agreed that it had gotten it wrong"); *Kyles v. Hoosier Papa LLC*, 2023 WL 2711608, at *7 (N.D. Ill. Mar. 30, 2023) ("state of mind only relates to what relief Plaintiff may seek if he establishes BIPA violation"); *Vaughan v. Biomat USA, Inc.*, 2022 WL 4329094, at *12 (N.D. Ill. Sept. 19, 2022) (court rejected the argument that requests for enhanced liquidated damages in BIPA case should be stricken because they do not plausibly allege recklessness or willfulness, stating that "requests for liquidated damages [under BIPA] are not

13

'claims' . . . but demands for relief," and a plaintiff "need not plead facts (such as plausibly suggesting negligence, recklessness, or intentional conduct) that show his entitlement to these precise forms of relief") (citing *Sosa*, 2022 WL 1211506, at *10) (collecting cases)[1]

Assuming *arguendo* that "state of mind" allegations are required to request enhanced statutory damages under BIPA, Vivid's argument that "[a]t bottom, Donets only alleges that the statute has existed since 2008, and that Vivid Seats failed to comply with the statute," Mem. at 7, concedes that Plaintiff's allegations are sufficient. *See Peatry*, 2020 WL 919202, at *6 ("By alleging that Bimbo has made no effort to comply with BIPA, Peatry has pleaded facts to suggest Bimbo acted with negligence, recklessness, or intent"); *Rogers v. BNSF Ry. Co.*, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("The BIPA took effect more than 10 years ago, and if the allegations in the complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. That is certainly enough, at the pleadings stage, to make a claim of negligence or recklessness plausible"); *Kyles*, 2023 WL 2711608, at *8 (same except BIPA in place eight years); *Horn*, 2022 WL 1090887, at *3 ("even treating state of mind as an element of a BIPA claim, by alleging Method has made no effort to comply with BIPA, Horn has pleaded facts to suggest that [defendant] acted with negligence, recklessness, or intent").

In sum, Plaintiff's requests for enhanced liquidated damages under BIPA for willful or reckless violations are not claims but are instead demands for relief, and therefore, Plaintiff need not plead facts suggesting negligence, recklessness, or intentional conduct to show that show his entitlement to these precise forms of relief. *Vaughan*, 2022 WL 4329094, at *12; *Wilk*, 2022 WL 4482842, at *6; *Kyles*, 2023 WL 2711608, at *7; *Sosa*, 600 F. Supp. 3d at 874-75; *Cothron*, 467

---

[1] Plaintiff respectfully submits that Defendant's reliance on *Kukovec v. Estee Lauder Co., Inc*. 2022 WL 16744196, at *8 (N.D. Ill. Nov. 7, 2022), *see* Mem. at 6, is unpersuasive considering the authorities discussed above.

F. Supp. 3d at 615; *Ibarra*, 2021 WL 1921015, at *4; and *Peaty*, 2020 WL 919202, at *6. Even if "state of mind" allegations were a requirement for enhanced statutory damages, that Vivid failed to comply with BIPA for over seven years is sufficient to establish at the pleadings stage willful and reckless conduct. *Peatry*, 2020 WL 919202, at *6; *Rogers v. BNSF*, 2019 WL 5635180, at *5; *Kyles*, 2023 WL 2711608, at *8; *Horn*, 2022 WL 1090887, at *3.

## Conclusion

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Vivid's Rule 12(b)(6) motion to dismiss Count II of Plaintiff's FAC, and that it also deny Vivid's motion to dismiss/strike Plaintiff's prayer for relief of $5,000 for each violation that is found to be willful or reckless.

SAMUEL DONETS, individually and on behalf of All others similarly situated

By: /s/ Wallace C. Solberg
Wallace C. Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
(847) 368-1500
wsolberg@andersonwanca.com

Nick Wooten
Head of Consumer Litigation
DC LAW, PLLC
1012 W. Anderson Ln.
Austin, TX 78757
(512) 220-1800
nick@texasjustice.com

Rusty A. Payton (Illinois Bar No. 6201771)
PAYTON LEGAL GROUP
20 North Clark Street, Suite 3300
Chicago, IL 60602
(773) 682-5210
info@payton.legal

>Arthur C. Czaja (Illinois Bar No. 6291494)
>LAW OFFICE OF ARTHUR CZAJA
>7521 N. Milwaukee Avenue
>Niles, IL 60714
>(847) 647-2106
>arthur@czajalawoffices.com
>
>*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

>s/ Wallace C. Solberg
>Wallace C. Solberg

16