**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAMUEL DONETS., individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br> v. <br><br> VIVID SEATS, LLC, a Delaware limited liability company, <br><br> Defendant. | Case No.: 1:20-cv-03551 |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff Samuel Donets, individually and on behalf of all others similarly situated (the "Class"), through counsel, brings his Second Amended Complaint ("SAC") against Vivid Seats LLC for its violations of the Illinois Biometric Information Privacy Act ("BIPA" or the "Act"), 740 ILCS § 14/1, *et seq*.

**Nature of the Case**

1. This is a class action arising out of the Defendant's unlawful collection, use, retention, disclosure, and dissemination of the personal biometric identifiers and biometric information of Plaintiff and the Class in violation of BIPA.

**The Parties**

2. Plaintiff, Samuel Donets ("Plaintiff"), is a citizen of Illinois who resides in Glenview, Illinois.

3. Defendant, Vivid Seats LLC ("Vivid" or "Defendant"), is a limited liability company formed and existing under the laws of the state of Delaware.

4. Defendant is registered with the Illinois Secretary of State to do business in Illinois

and maintains one or more offices in Illinois.

5. Defendant operates a ticket and event marketplace where tickets to concerts, shows, and sporting events are marketed and sold to consumers throughout the world. According to Vivid's Facebook profile, it "is the leading independent online ticket marketplace, sending tens of millions of fans to live events every year."

6. Defendant operates the web site www.vividseats.com.

7. Defendant maintains its principal offices in Chicago, Illinois, where it employs individuals to, *inter alia*, respond to telephone and internet inquiries and to process marketplace orders.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there is minimal diversity as defined by the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2).

9. This Court has personal jurisdiction over Defendant because its principal place of business is in Illinois, it conducts substantial business in Illinois, and a substantial portion of the acts complained of took place in Illinois.

10. Venue lies in this District pursuant to 28 U.S.C. §1391(b) and 1400(a) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and Defendant resides and may be found in this District.

**Summary of Claims**

11. During the relevant time-period—beginning June 17, 2015—employees of Defendant, including Plaintiff and members of the proposed Class, were required as a condition of their employment to have their fingerprint(s) scanned ("finger scans"). The time-keeping system

used by Defendant was provided by Paychex Inc. ("Paychex"). It contained a time clock ("biometric clock") and finger-scan feature.

12. The time-keeping system employed by Defendant created a "template" of the finger image or scan and was used to verify the employee's identity when the employee arrived at or departed from the workplace.

13. As discussed further below, the time-keeping system used by Defendant collected and retained its employees' "biometric identifiers" and "biometric information" and disseminated same to Paychex without consent, in violation of §§ 14/15(b) and 14/15(d) of BIPA.

### The Illinois Biometric Privacy Act

14. Although there may be benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

15. Recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA, 740 ILCS § 14/1, *et seq.*, effective October 3, 2008. The General Assembly explained its findings and intent in enacting BIPA. *See generally* 740 ILCS § 14/5(a)-(g). After stating that the use of biometrics is "growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings," and that "major national corporations have selected Chicago and other State locations as pilot testing sites for new applications of

biometric-facilitated financial transactions, including *finger-scan technologies* at grocery stores, gas stations, and school cafeterias," the General Assembly stated that:

> Biometrics are unlike other unique identifiers used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS § 14/5(c) (emphasis added).

16. The General Assembly found that "an overwhelming majority of members of the public are wary of the use of biometrics when such information is tied to finances and other personal information," *id*. at § 14/5(d), that "[d]espite limited State laws regulating the collection, use, safe-guarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions," *id* § 14/15(e), and that "the full ramifications of biometric technology are not fully known," *id*. at § 14/5(e)

17. The General Assembly found that "the public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. at § 14/5(g).

18. To address the foregoing findings and concerns, BIPA provides that:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative *in writing* that a *biometric identifier or biometric information* is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

4

740 ILCS § 14/15(b).

19. For BIPA purposes, a "biometric identifier" means "a retina or iris scan, fingerprint, voice print, or scan of hand or face geometry." 740 ILCS § 14/10.

20. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based upon an individual's biometric identifier used to identify the individual." 740 ILCS § 14/15(b).

21. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS § 14/10.

22. Section 15(d) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may *disclose, redisclose, or otherwise disseminate* a person's or customer's biometric data unless (1) the subject of the biometric identifier or biometric information . . . consents to the disclosure or redisclosure." *Id*. § 15(d)(1).

23. The Act provides a private right of action for any person aggrieved by a violation of the Act. *Id*. § 20. A prevailing party may recover liquidated damages of $1,000 or actual damages, whichever is greater, for each negligent violation of the Act, and liquidated damages of $5,000 or actual damages, whichever is greater, for each intentional or reckless violation of the Act. *Id*.

## ADDITIONAL FACTS

24. Plaintiff worked for Defendant in Illinois in 2014-2015 at Defendant's Illinois call center.

25. Since at least 2015, Defendant required employees to scan their fingerprints at the start and conclusion of each day and each time they left and returned from lunch or break.

26. Defendant has, during the relevant time period, employed hundreds of people in

5

Illinois.

27. Each time an employee of Defendant began and ended a workday, and when they left and returned from lunch or break, Defendant required a scan of the employee's fingerprints. Plaintiff's fingerprints were scanned no less than four times each day that he worked for Defendant and hundreds of times over the course of his employment by Defendant.

28. Plaintiff never signed a written release allowing Defendant to collect or store fingerprints, as required by § 14/15(b) of the Act.

29. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

30. In a Notice of Retention Policy and Consent Form ("Notice") Defendant sent to former employees, attached hereto as Exhibit A, Defendant affirmatively stated that its "time and attendance software used a timekeeping system that may have captured 'biometric information' and/or a 'biometric identifier' as those terms are defined in the Illinois Biometric Information Privacy Act, 740 ILCS §§ 14/1, *et seq*. for the purpose of identifying employees and recording time entries while utilizing the Company's timekeeping system."

31. In that same Notice, Defendant stated that "the time clock that was used was a computer-based system that may have scanned an employee's finger for purposes of identification and further understand that the computer system may have extracted unique data points and created a unique mathematical representation or 'template' of the finger image used to verify the employee's identity when the employee arrived at or departed from the work place." (Exhibit A).

32. Finally, Defendant sought to have the former employee acknowledge that it gave its "voluntarily consent" to "[Vivid's], its vendors', and/or the licensor of the [Vivid's] time and attendance software's prior use of the timekeeping system, including to the extent that it utilized

6

the employee's finger scan(s) and related templates, and hereby acknowledge my voluntary consent to the *[Vivid] having provided such templates and associated data to its vendors, and/or the licensor of [Vivid's]'s time and attendance software*." (Exhibit A) (emphasis added).

33. Although BIPA was enacted in 2008, Defendant by its own admission was using a biometric time clock approximately eight years later (May 2016), including during Plaintiff's employment with Defendant. (Exhibit A).

34. In other words, Defendant intended to and did over a substantial period of time systematically collect and disseminate Plaintiff's and the proposed Class's biometric data and information without complying with BIPA, including dissemination to Paychex. Such conduct is both negligent and reckless.

## CLASS ALLEGATIONS

35. Plaintiff brings this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Defendant's BIPA violations subject to modification after discovery and case development:

> All current and former employees of Vivid who had any biometric identifier or biometric information collected, captured, and received by Vivid while working in Illinois without prior written consent and/or disseminated and disclosed by Vivid to third parties without prior consent during the five (5) year period preceding the filing of this action.

36. Class members are identifiable through Vivid's records, payment databases, and Vivid's third-party vendors and licensors.

37. Excluded from the Class are: (1) any Judge presiding over this action and members of their families; (2) Vivid, Vivid's subsidiaries, parents, successors, predecessors, and any entity in which the Vivid or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class;

(4) Plaintiff's counsel and Vivid's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

38. **Numerosity (Fed. R. Civ. P. 23(a)(1)**: The exact number of Class members is currently unknown to Plaintiff, but it exceeds three hundred, making individual joinder impracticable and thus satisfies numerosity. Ultimately, the Class members will be easily identified through Vivid's records.

39. **Commonality (Fed. R. Civ. P. 23(a)(2)**: Common questions of law and fact apply to the claims of all class members. Common questions for the Class include, but are not necessarily limited to, the following:

> (a) Whether Vivid collected, captured, or otherwise obtained biometric identifiers or biometric information from Plaintiff and the Class in the form of their fingerprints.
>
> (b) Whether Vivid obtained from Plaintiff and the Class a written release (as defined in 740 ILCS § 14/10) to collect, use, or store the biometric identifiers or biometric information of Plaintiff and the proposed Class.
>
> (c) Whether Vivid failed to inform Plaintiff or the Class in writing of the specific purpose and length of term for which the fingerprints were being collected, stored, and used.
>
> (d) Whether Vivid disclosed or disseminated the biometric identifiers or biometric information of Plaintiff and the proposed Class to third parties, including Paychex.
>
> (e) Whether Vivid used the fingerprints, finger-scans, and/or templates derived therefrom of Plaintiff and the proposed Class to identify them.
>
> (f) Whether Vivid's violations of BIPA were committed negligently.
>
> (g) Whether Vivid's violations of BIPA were committed intentionally or recklessly.

40. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of all class members because they arise from the same course of action (or inaction) by Defendant: the failure to comply with BIPA when collecting, obtaining, using, storing, and disseminating

Plaintiff's and its employees' biometric identifiers and biometric information. Plaintiff is making the same claims and seeking the same relief for himself, and all Class members, based on the same statute—BIPA. Accordingly, Plaintiff satisfies typicality.

41. **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class. As stated, Plaintiff's claims are typical of the claims of the Class.

42. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))**: Common questions of law and fact predominate over any questions affecting only individual members, *see* ¶ 39, *supra*, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

    (a) Proof of the claims of Plaintiff will also prove the claims of the Class without the need for separate or individualized proceedings;

    (b) Evidence regarding defenses or exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries;

    (c) Defendant acted pursuant to common policies or practices in the same or similar manner with respect to all Class members; and

    (d) A class action will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs.

43. This case is inherently manageable as a class action in that:

    (a) Defendant's records will enable Plaintiff to readily identify Class members and

establish liability and damages;

(b) Liability and damages can be established for Plaintiff and the Class with the same common proofs;

(c) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or similar manner;

(d) A class action will result in an orderly and expeditious administration of claims, and it will foster economies of time, effort, and expense;

(e) As a practical manner, the claims of the Class are likely to go unaddressed absent class certification.

## COUNT ONE

### Violation of §15(b) of BIPA
### [Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information]

44. Plaintiff realleges all prior paragraphs of the SAC as if set out here in full.

45. BIPA requires companies to obtain informed written consent from employees before acquiring their biometric information and biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS § 14/15(b) (emphasis added).

46. Defendant failed to comply with these BIPA mandates.

47. Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

48. Plaintiff and the Class are individuals who had "biometric identifiers" (in the form of fingerprints) collected by Defendant. *See* 740 ILCS § 14/10.

49. The biometric identifiers of the Plaintiff and the Class were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

50. Defendant systematically and automatically collected, used, stored, and disclosed biometric identifiers and/or biometric information of Plaintiff and the Class without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

51. Defendant did not inform Plaintiff and the Class in writing of the specific length of time for which biometric identifiers and/or biometric information were being collected, stored, used, and disseminated as required by 740 ILCS § 14/15(b)(2), thereby depriving them of their statutory right to such information.

52. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA *each time* the Defendant collected, stored, or used Plaintiff's or the Class's biometric identifier or biometric information.

53. Plaintiff and the Class seek (1) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (2) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### COUNT TWO

**Violation of §15(d) of BIPA**
**[Disclosure of Biometric Identifiers and Information Before Obtaining Consent]**

54. Plaintiff realleges all prior paragraphs of the SAC as if set out here in full.

55. BIPA prohibits private entities from disclosing, redisclosing, or otherwise disseminating a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure or redisclosure. 740 ILCS § 14/15(d)(1).

56. Defendant failed to comply with this BIPA mandate.

57. Defendant is an entity registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. 740 ILCS § 14/10.

58. Plaintiff and the Class are each an individual who had their "biometric identifiers" (in the form of their fingerprints) collected by Defendant, as explained in detail above. 740 ILCS § 14/10.

59. The biometric identifiers of Plaintiff and the Class were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. 740 ILCS §14/10.

60. By using the time-keeping system Defendant was provided by Paychex, which included a biometric time clock and finger-scan feature, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers and/or biometric information of Plaintiff and the Class to Paychex without first obtaining the consent required by 740 ILCS § 14/15(d)(1).

61. Defendant has admitted, and/or at the very least has given Plaintiff substantial reason to suspect, that Defendant systematically disclosed, redisclosed or disseminated biometric identifiers and/or biometric information of Plaintiff and the Class to third parties, including, Paychex. *See* ¶¶ 30-32, *supra*.

62. By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated BIPA each time there was a disclosure, redisclosure, or dissemination of the Plaintiff's or Class's biometric

12

identifiers in violation of Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

63. Plaintiff and the Class seek statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and for the Class, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel.

B. Awarding Plaintiff and the proposed Class statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20.

C. Awarding reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

By: */s/ Wallace C. Solberg*
Wallace C. Solberg
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
(847) 368-1500
wsolberg@andersonwanca.com

>Nick Wooten
>Head of Consumer Litigation
>DC LAW, PLLC
>1012 W. Anderson Ln.
>Austin, TX 78757
>(512) 220-1800
>nick@texasjustice.com
>
>Rusty A. Payton (Illinois Bar No. 6201771)
>PAYTON LEGAL GROUP
>20 North Clark Street, Suite 3300
>Chicago, IL 60602
>(773) 682-5210
>info@payton.legal
>
>Arthur C. Czaja (Illinois Bar No. 6291494)
>LAW OFFICE OF ARTHUR CZAJA
>7521 N. Milwaukee Avenue
>Niles, IL 60714
>(847) 647-2106
>arthur@czajalawoffices.com
>
>*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

>s/ Wallace C. Solberg
>Wallace C. Solberg